# NORA AND GEORGE R. WICKER v. NORTH STATES CONSTRUCTION COMPANY, INC.[1]

March 13, 1931.

Nos. 28,295, 28,296.

*Ware & Melrin* and *W. L. Sholes,* for appellant.
*H. J. Edison* and *Ohman, Fryberger & Wangaard,* for respondents.

[1]Reported in 235 N. W. 630.

Wilson, C. J.

There are two cases. Plaintiffs are husband and wife, and each seeks to recover for loss arising out of injuries received while plaintiffs were riding together in the husband's automobile. The jury found for each of the plaintiffs. Defendant has appealed from separate orders denying its alternative motion for judgment non obstante or a new trial in each case.

Defendant is engaged in construction work and builds bridges and culverts. In the summer of 1929 it constructed a monolithic culvert for Olmsted county on a public highway known as state aid road No. 5 running east and west. This highway was the ordinary good graveled highway, the graveled portion being about 20 feet wide with a five-foot grass shoulder on each side. Concrete was used in the construction of the culvert. The pouring of the concrete was finished about June 14, 1929. It was left exposed to ripen. Defendant placed a barricade of plank across the highway on the west side of the culvert. On the east side of the culvert the road was barricaded by defendant's concrete mixer. It was placed in the middle of and crosswise of the road. It weighed 5,500 pounds. Its nearest wheels were about three feet from the culvert. It was about one-half taller than an automobile, 12 feet long and six feet wide. Traveling west, a detour road left the main highway (unknown to plaintiffs) to the right at 25 to 30 feet from the mixer. It was 12 to 14 feet wide, had been used considerably, and was in fairly good condition. There were no signs on the road to warn of its being blocked to travel.

On June 28, 1929, at about 9:30 p. m. plaintiffs, with their 13-year old son, were traveling west on highway No. 5 in a Cadillac Victoria coupé. Mr. Wicker was at the wheel. The folding or turn-down seat at his right was folded. Mrs. Wicker and her child to her right were seated on the main seat of the coupé somewhat back of the driver's seat. They had come from Illinois, and Mr. Wicker had driven on that day about 200 miles. Their destination was only about 14 miles beyond. The night was dark. The Cadillac equipment, including the lights, was modern and was in good condition.

Mr. Wicker was driving at perhaps 30 miles per hour and was watching the road. He did not discover the mixer in the road until he was within 20 to 30 feet of it. He had his foot on the foot brake. He grabbed and was in the act of applying the emergency brake as well as the foot brake when the automobile slid in the loose gravel and struck the mixer with a violent impact, seriously injuring both plaintiffs. It was merely an interval of a split second from the time of his seeing the mixer until the crash. He called "oh," and the crash came.

Plaintiffs were not strangers in the community where the accident occurred though they now live at Evanston, Illinois. They did not know the culvert was being constructed. They had not been on this road for about five years. Approaching the culvert from the east the road was straight. It had a slight decline for one-half mile toward the culvert, not over three per cent. Mrs. Wicker did not see the obstruction until within less than 20 feet from it. She was sitting with her right arm about the boy's neck and was watching the road.

The mixer had considerable dried concrete upon it, giving it much the same color as the highway and tending to destroy its discernibility. At night the concrete was of almost the same color as the roadbed, but the detour road had a different color. The testimony is that the color of the mixer was "of a neutral character such as not to make it conspicuous on the road." The day had been bright and dry. The car was so equipped with lights that the driver could throw a light high, disclosing the roadway 300 to 500 feet ahead, or a light low, usually used when meeting cars, throwing a light ahead, the main rays of which strike the ground 50 to 60 feet but with some diffusion beyond. The lights were such that the mixer might have been seen farther away, but the fact is that neither Mr. nor Mrs. Wicker did see it until within 20 to 30 feet thereof.

■ The evidence was sufficient to justify the jury in concluding that the defendant was guilty of negligence in permitting the concrete mixer so to remain in the center of the highway without proper

lights, without proper guarding or warning. Care must be commensurate with the risk involved.

## MR. WICKER'S CASE.

■ The claim is that Mr. Wicker was guilty of contributory negligence. It is suggested that his lamps did not meet the statutory requirement. It is the duty of the driver of an automobile in this state to have the head lamps so arranged and adjusted that they will at all times under normal atmospheric conditions and on a level road produce a driving light sufficient to render clearly discernible a person 200 feet ahead. L. 1927, p. 563, c. 412, § 50, 1 Mason, 1927, § 2720-50.

The evidence would sustain a finding by the jury either way as to how the lights were being operated at the time of the accident. The driver frankly stated that he did not know whether his lights were turned up or turned down. The circumstances strongly tended to show that the full force of the lamps was thrown ahead. The verdict would indicate that the jury so found. If so, the statute was not violated.

The contention of defendant is that it appears as a matter of law that the statute was violated and therefore the driver was guilty of contributory negligence as a matter of law. Such does not follow. It is true that when a defendant's violation of a statute proximately results in injury to one for whose benefit the statute was enacted, liability follows as a matter of law irrespective of conduct constituting negligence. But the violation of the statute by plaintiff, who is not one for whose protection the law was enacted, is not conclusive evidence of contributory negligence, but is merely a circumstance for the consideration of the jury. Dohm v. R. N. Cardozo & Brother, 165 Minn. 193, 206 N. W. 377.

In Heiden v. Minneapolis St. Ry. Co. 154 Minn. 102, 191 N. W. 254, it was held that it was the duty of a motorman operating a street car after dark to have it under such control that when the rays of the headlight enable him to discern a vehicle on the track he can stop the car in time to avoid a collision. This would mean that he should be able to stop his car within the radius of his own light.

But it would seem that the rule as stated there was more appropriate to the operation of a street car on rails, from which it cannot turn, than to an automobile driver upon a modern highway traveling at modernly recognized reasonable speed. Some states however have extended the doctrine to automobile drivers, and some of the cases are cited in the Heiden case, 154 Minn. 102, 191 N. W. 254. See also Spencer v. Taylor, 219 Mich. 110, 188 N. W. 461; Lett v. Summerfield & Hecht, 239 Mich. 699, 214 N. W. 939; Ott v. Wilson, 216 Mich. 499, 185 N. W. 860; Harnau v. Haight, 189 Mich. 600, 155 N. W. 563; Knoxville R. & L. Co. v. Vangilder, 132 Tenn. 487, 178 S. W. 1117, L. R. A. 1916A, 1111; Lauson v. Town of Fond du Lac, 141 Wis. 57, 123 N. W. 629, 25 L.R.A.(N.S.) 40, 135 A. S. R. 30; Roper v. Greenspon (Mo. App.) 192 S. W. 149.

But Mr. Wicker need not quarrel with the rule requiring one to be able to stop his car within the radius of his own lights. It does not control here. Under the most unfavorable view of the evidence he could see plainly for a distance of 50 to 60 feet ahead even if we should say that the short lights were turned on. The jury were warranted in concluding that the difficulty in the instant case was that the object in the road was about the same color as the road, that it was so tall that its top did not outline against the horizon and was not reasonably discernible under the circumstances until within about 20 feet therefrom. Indeed there is nothing in the record to indicate that the driver could not have stopped his car within the radius of his lights. In this case it was permissible for the jury to conclude that no automobile light would have seasonably disclosed the obstruction. If so, it would seem to follow that the accident was not due to the driver's conduct or to the character of his lights. Nor is there anything in the record to show that the obstruction was not illuminated by the lamps within a greater distance. The driver did not see it. Had it been of a different color he might have seen it. The absence of flags or warning signs may have lulled him into relaxing his vigilance. All the evidence and circumstances made the question of Mr. Wicker's contributory negligence a question for the jury. Aubin v. Duluth St. Ry. Co.

169 Minn. 342, 211 N. W. 580. Defendant's claim that disregarding the statute he was guilty of contributory negligence as a matter of law cannot be sustained. If human conduct was perfect we would of course have higher standards and fewer accidents; but the trouble is that the law makes some allowances for human frailties and hence uses the conduct of an ordinarily prudent person as a standard; and just what an ordinarily prudent person would do under the circumstances here involved must be solved by the composite judgment of the jury. This included the conduct of such person driving as Mr. Wicker was in the nighttime after a 200-mile drive and at a time when the highway was free from other traffic.

### MRS. WICKER'S CASE.

The trial court did not submit to the jury the question as to whether or not Mrs. Wicker was guilty of contributory negligence. Defendant says this was error. We have fully stated the facts. Mrs. Wicker was not driving. Her husband was. Her attention was partly directed to her son. The highway was free from traffic. There was no special thing to command her attention. She had had a long ride. Night had come. She was simply sitting, riding. The road was peaceful, and she was apparently relaxed. Her eyes were on the road ahead. She was not guilty of any affirmative act that could be said to constitute negligence. Was she guilty of any act of omission? What was her duty under the circumstances?

The car was traveling upon a road permitting greater speed. There was nothing to warn her of any approaching danger. She apparently had confidence in her husband's driving. We see no reason why a wife riding with her husband is required to be on watch at all times. It occurs to us that an ordinarily normal, prudent woman under such circumstances would do about as Mrs. Wicker did, and she would not be expected to be constantly on guard to avoid dangers which the driver should discover. The driver was not acting in a careless manner, nor was he approaching a danger known to Mrs. Wicker and unknown to him. Under such circumstances it is not the duty of the passenger or guest to watch or warn the driver. There is not a single thing in the record to

indicate any reason why Mrs. Wicker was charged with the duty of in any way protesting to her husband. Mrs. Wicker did not discover the obstruction in the road until almost the moment of the crash. It was not her duty to discover it. She had the same reason for not seeing it as Mr. Wicker had, though she was not charged with the same duty of observation. There really was no reason under the circumstances why she should have been expected to be watching the road.

The safety of persons in an automobile rests primarily with the driver. Duty in relation thereto falls upon a guest in the car when he is aware that the driver is incompetent or careless or unmindful of some danger known or apparent to the guest. It may also be said that duty requires the guest to act if the driver is not taking proper precaution in approaching a place of danger and, being so aware, fails to warn or admonish the driver or to take proper steps for his own safety. We have a large number of cases relating to the conduct of guests in automobiles. See 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 7038.

Under the facts and circumstances of this case we hold that the evidence would not support a finding that Mrs. Wicker was guilty of contributory negligence, and hence the court correctly refused to submit the question to the jury. Brubaker v. Iowa County, 174 Wis. 574, 183 N. W. 690, 18 A. L. R. 303; Wills v. Anchor C. & S. Co. 26 Ohio App. 66, 159 N. E. 124; Commrs. of Kent County v. Pardee, 151 Md. 68, 134 A. 33; Hedges v. Mitchell, 69 Colo. 285, 194 P. 620; Saint Mary's Academy v. Solomon, 77 Colo. 463, 238 P. 22, 42 A. L. R. 964.

The record fails to disclose any omission on the part of Mrs. Wicker that would constitute a violation of duty.

Both orders are affirmed.