STANLEY AUSEN v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY AND ANOTHER.[1]

January 25, 1935.

No. 29,915.

[1]Reported in 258 N. W. 511.

*Daniel Carmichiel* and *K. A. Campbell,* for appellant.

*Grant L. Martin,* for respondent Minneapolis, Northfield & Southern Railway.

*John E. Palmer* and *A. O. Bjorklund,* for respondent Minneapolis, St. Paul & Sault Ste. Marie Railway Company.

HOLT, JUSTICE.

Plaintiff appeals from the judgment entered on a verdict directed in favor of defendants.

The action is to recover for personal injuries sustained by plaintiff when the automobile in which he was riding ran into a freight train upon a grade crossing on Marshall street near Thirty-fourth avenue northeast in Minneapolis. The Minneapolis, St. Paul & Sault Ste. Marie Railway Company, hereafter referred to as the Soo road, here crosses Marshall street almost at right angles. The main track is laid on a bridge of the customary timber construction supported by piers or bents of timber. One bent is in the center of the street, one bent near the curb line on either side, leaving a 16-foot lane of travel on either side of the center bent. There is another bent east of the easterly bent mentioned; between the two, on the same level as the street, is the track of the Anoka Electric line, which runs southerly along the easterly side of Marshall street. Parallel with the bridge and about 28 feet south of the southerly edge of the bridge, a switch or yard track of the Soo road crosses

Marshall street at grade. This is called the low track. It connects with the main line a few hundred feet west about where the main line crosses the Mississippi river. This low track serves an elevator and a switch yard to the east of Marshall street. About 46 feet north of the bridge a railroad track crosses Marshall street and connects the Anoka Electric line with the Soo road main line at about the same point where its low track so connects. The distance from the center of the northerly grade crossing to the center of the southerly grade crossing is 104 feet measured along the center line of Marshall street. That distance is level, but is slightly lower than the street north and south. Marshall street runs practically north and south for several blocks on either side of the bridge. The clearance between the surface of the street and the sills of the bridge is about 12 feet, and the rails are about 15 feet above the street. The width of the bridge is about 28 feet. The end timber of the center bent has the customary slanting bands of black and white paint, and also a reflector, some two and one-half feet from the bottom. Extending a foot or two from the floor sill over the center bent, at each end thereof, is an electric light with a reflector so as to illumine the black and white bands thereon. About 12 feet south of the low track and about 26 feet above the center of the street is suspended a 1,000-candle power electric light, and about 45 feet north of the Anoka Electric crossing, at about 26 feet above the center of the street, a 400-candle power electric light. These two lights are maintained by the city and the two on the bridge by the Soo road. Before reaching the grade crossings on either side of the bridge are the customary cross signs—two planks crossed, fastened to a post, some 10 or 12 feet above the ground, the planks being painted white and bearing in large black letters the words "Railroad Crossing." The bridge and tracks here involved are owned by the Soo road. The train into which the automobile in which plaintiff was a passenger ran was operated by the other defendant under a traffic arrangement with the Soo road, the terms of which are unimportant for a decision herein.

The accident occurred at 3:10 a. m. Sunday, October 25, 1931, on the return of a party of eight young people who had spent the night at a resort located on the East Side River Road, about five miles north of Minneapolis. Plaintiff and two young ladies rode in a Chrysler roadster, owned and driven by one Patterson. One young lady was seated between the driver and plaintiff. The other lady was seated on plaintiff's lap and facing the driver. The other four rode in a Ford roadster and were seated in the same manner as those in the Chrysler. The Ford was following about a block or less behind the Chrysler as they approached the bridge. Just before their approach a freight train of 30 cars, being transported by the Minneapolis, Northfield & Southern Railway Company, came from the Soo road yard east of Marshall street upon the low or south grade track and was to cross the river upon the main line of the Soo road. It stopped before crossing the Anoka Electric track, and the head brakeman with a lantern walked ahead of the train as it moved across that track and Marshall street. On the westerly side of the street he boarded the locomotive to ride up to the main track switch. Before throwing the switch he had to go to a box a short distance ahead to ascertain from the instrument there attached whether or not the block about to be entered was open and clear of other trains. He ascertained that it was, came back, threw the switch, and signaled the engineer to come ahead. While this took place the train was standing so that a gondola car, the twelfth from the locomotive, obstructed the westerly lane of Marshall street. About the same moment that the engineer of the train received the signal to go ahead the Chrysler car struck the gondola car mentioned, and a moment or two later the Ford did the same thing to the left of the Chrysler. The cars fastened to the gondola car and were dragged along and crushed against the embankment on which the main track was laid. In the collision and the escape from the Chrysler roadster plaintiff was severely injured.

Plaintiff, being a passenger, cannot be charged with the negligence of the driver. So, as we view the appeal, the court's ruling directing a verdict for defendant and the judgment thereon should

be sustained only if the evidence fails to make the alleged negligence of both defendants a jury issue. We therefore lay out of consideration the question of plaintiff riding in a car whose lights did not clearly reveal such an obstruction as a gondola car, and with a woman in his lap obscuring his vision ahead, and shall decide the appeal upon the question whether any actionable negligence can be found in the evidence against either defendant which could be considered as a proximate cause or a contributing cause of plaintiff's injuries.

The principles stated and applied in Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31, 32, when applied to the evidence herein, control and, we think, sustain the court below in directing a verdict for defendants. There it was held that it was not negligence in itself to allow a train to stand or move on a highway crossing; that the statutory signals for trains approaching a highway crossing are solely for the benefit of travelers on the highway to warn them of an approaching train, and are not for the purpose of preventing automobile drivers from running into the side of a train already on the crossing. It was also considered that in that case the evidence did not tend to establish the crossing to be so exceptionally dangerous as to require other precautions for the protection of travelers on the highway than those required by statute. Of the many authorities cited in the Crosby case the following are particularly in point under the evidence herein: St. Louis S. F. Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; Philadelphia & Reading R. Co. v. Dillon, 31 Del. 247, 114 A. 62, 15 A. L. R. 894; McGlauflin v. Boston & Maine R. Co. 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750; Gage v. Boston & Maine R. Co. 77 N. H. 289, 90 A. 855, L. R. A. 1915A, 367; Nadasky v. Public Service R. Co. 97 N. J. L. 400, 117 A. 478; Yardley v. Rutland R. Co. 103 Vt. 182, 153 A. 195; Hendley v. C. & N. W. Ry. Co. 198 Wis. 569, 225 N. W. 205; Orton v. Pennsylvania R. Co. (C. C. A.) 7 F. (2d) 36. Each case involved injury to a person riding with the owner and driver of an automobile which ran into a standing or slowly moving train at a grade crossing on the highway in the nighttime, the decision

in each case being placed on the ground that a railroad ordinarily is not required to guard a train temporarily stopped upon a grade crossing or in motion thereon so that automobiles approaching the crossing may avoid running into it. There certainly was nothing in the situation making this crossing exceptional or unusually hazardous. On the contrary, a powerful electric light near each of the two grade crossings and the smaller electric lights above either end of the center bent of the bridge gave all the light that could reasonably be required to reveal the presence of the train on the crossing. Moreover, the evidence shows there were at the time in question no atmospheric conditions interfering with the visibility of objects. Plaintiff's counsel states that it was "a clear, bright moonlight night." Plainly there was no negligence shown in the operation of the train onto or over this crossing; therefore the verdict was properly directed for the defendant the Minneapolis, Northfield & Southern Railway Company, the road moving the train. The same must also be held as to the other defendant, the owner of the bridge and tracks involved. Proper buck cross signs warned travelers on Marshall street of their approach to railroad crossings. Was there any exceptional condition disclosed by the evidence that would make it the duty of the Soo road to protect travelers on Marshall street against the danger of running into a train that might happen to be on this grade crossing in the nighttime? Notwithstanding shadows resulting from the position of the bridge, poles, and the train itself with respect to the electric lights, no reasonable person could apprehend that a driver of an automobile, equipped with the lights required by law, and driving with ordinary care, would not discover a train, or a railroad car of any sort, on the crossing in time to avoid running into it. A verdict which found that the Soo road was negligent in not installing other safeguards than those already there to disclose to users of Marshall street that the crossing was occupied by a train or railroad car could not be permitted to stand. There is no claim that any statute or order of the railroad and warehouse commission was not complied with. In the Crosby case, 187 Minn. 263, 267, 245 N. W. 31, it is said:

"Common experience is that the occupation of a highway crossing by a train is visible to travelers on the highway, including automobile drivers whose cars are properly equipped with lights and who exercise ordinary care. It would seem that a train upon a crossing is itself effective and adequate warning. It has always been so considered. This is so whether the train is moving or standing. A railroad company is under no obligation to light an ordinary highway crossing at night so that its trains thereon may be seen by travelers."

As far as lights were concerned, this was not a hazardous crossing. It was protected by two powerful electric lights, one a few feet south of the crossing involved and one about 160 feet north thereof. It cannot be considered a dangerous crossing in so far as obstructing or obscuring the visibility of a train standing or moving over the same to travelers upon the highway. Another matter which merits some consideration is that by L. 1925, c. 336 (1 Mason Minn. St. 1927, §§ 4743-1 to 4743-17, inclusive), the jurisdiction is given the railroad and warehouse commission to prescribe and order what signs and devices should be installed and maintained by a railroad for the protection of travelers at highway grade crossings. It is readily seen that if there be diversity in the protective means installed or furnished at different railroad crossings the traveler may be misled or confused to his undoing. There is no evidence that the commission has ordered or required any other safeguards at this crossing than those now present.

Of the authorities cited by plaintiff, those involving a traveler on the highway being struck on a railroad grade crossing by an approaching train are not in point, and we omit any discussion of them. Nor need anything be said concerning cases where a motor vehicle, operating at night, stops on a highway without a tail-light and is run into, resulting in injury to persons or property; for there the violation of a statute furnished the evidence of negligence, such as Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22; nor those relating to an unlawful obstruction, as in Wicker v. North States Constr. Co. 183 Minn. 79, 235 N. W. 630.

The only case which furnishes some basis for plaintiff's argument that the jury·should have been permitted to say whether or not the Soo road here maintained an unusually dangerous grade crossing requiring other protection against running into a train·or car temporarily blocking the highway is Richard v. Maine Cent. R. Co. 132 Me. 197, 168 A. 811. However, the facts in that case were peculiar, and the actionable negligence was predicated on the acts and omissions of the crew in charge of the train occupying the crossing in violation of law and a rule of the defendant company, when there was a fog so heavy that it was impossible to see any object more than a few feet in front of proper automobile lights. In the instant case no negligence could be found in the crew moving the train. The head brakeman properly and safely conducted the train across Marshall street, and it occupied that crossing only sufficiently long to ascertain that it could proceed.

Since the conclusion is reached that the evidence fails to show any negligence on the part of defendants or either of them which caused or contributed to cause plaintiff's injury, it is not necessary to consider the question of contributory negligence or of Patterson's negligence, nor any ruling upon evidence bearing thereon. Nor is the question of proximate·cause of the injury reached. Of course, errors assigned on the admission or exclusion of testimony bearing upon the issue of the negligence of either defendant must be considered and determined. Of these the only ones meriting attention are: (a) The reception of the testimony of Miss Luftman, the clerk in the office of the city light inspector, and of the reports and records received and kept by her in such office; and (b) the testimony of Loomis and Peterson concerning certain experiments made at the *locus in quo*. Miss Luftman's testimony related to the candle power of the two street lights referred to and the reports and records received indicating that they were burning at the time of the accident. There was no error here. The reports and records were such as were regularly kept in the business of the city in its purchase of electricity for street lighting, and the witness was in charge of them and her work was to make entries from the reports into the records. 2 Dunnell, Minn. Dig. (2 ed. &

Supp. 1932) § 3347. Moreover, all the evidence was that these lights were burning at the time the autos ran into the gondola car. There was no error in permitting Loomis and Peterson to testify as to the place in the street, south of the bridge, where the rays of light from the north light strike the eye. There had been no change in the location of the light. We see nothing objectionable or prejudicial in this. It was merely ascertaining a fact by observation. Loomis was a civil engineer and made a plat of the location, and could have made a profile of the street, the bridge and lights, whereby it could have been shown where a straight line, projected from the north lamp and passing under the bridge, would strike a man's eye, or the side of a gondola car on the low track. But such a profile would be no more accurate or reliable than the observation of a person made from a position on the low track or upon the street south of the bridge from which he could see the north light.

The judgment is affirmed.

LORING, JUSTICE (concurring specially).

I concur in the result. I do so solely on the ground that ordinary care required no more warning than was here given by the conspicuous crossing sign. I also think the result in the Crosby case, 187 Minn. 263, 245 N. W. 31, was right. I do not, however, find myself in accord with the view that the signs required either by statute or by ordinary care at railroad crossings are solely to warn of approaching trains or that a standing train is under all circumstances sufficient warning of its presence. True, a statute requires warning of obstructions such as standing vehicles on a highway, but certainly, in the absence of such a statute, ordinary care would dictate like warnings. The decisions cited in the Crosby case holding that warning of railroad crossings is required solely to prevent travelers from getting onto a track and being there struck by a train are a survival of the thought applied to horse-drawn vehicles, where the slow speed of such vehicles gave adequate opportunity for them to stop for such obstructions as standing or passing trains.

Today it is a matter of common knowledge that automobiles are driven at night on our great, wide, straight highways at speeds which do not allow adequate time or space in which to stop for unusual objects such as freight trains completely obstructing the highway unless some warning of the possible or probable presence thereof is given, especially where, as in the case of such trains, the bodies of the cars are apt to be above the direct beams of the automobile lights, which the law requires to be projected below 42 inches at 75 feet from the vehicle. Recognizing this, our counties and state highway department place conspicuous warnings of all variations from the normal road. Drivers of ordinary prudence have grown to rely on the presence of such warnings. Certainly ordinary care does not require an automobile always to be driven in the expectation that a railroad train may suddenly and without warning loom up across the highway. To fail to recognize this fact is to apply horse and buggy law to a motor age and is a failure to recognize the common experience of mankind. Statistics disclose that 28 per cent of railroad crossing accidents result from vehicles being driven into the sides of moving or standing trains. A variety of circumstances may be suggested where persons driving with ordinary care might suddenly be confronted with a railroad crossing encumbered by a train. Obviously, ordinary care requires some warning of the presence of the crossing upon which long trains may be passing or standing. The luminous signs of the reflector type in common use at crossings and other places of danger are very effective warnings, and one placed at the outer edge of a railroad right of way would relieve the crossing of most of its hazards. In this case the owner of the tracks placed a large "buck" sign at a conspicuous place where approaching automobile lights must reveal it. As a matter of law under the circumstances I think ordinary care required no more.

Devaney, Chief Justice (concurring).

I agree with Mr. Justice Loring.