LYDIA M. OLSON v. CHICAGO GREAT WESTERN RAILROAD COMPANY.[1]

March 1, 1935.

No. 30,077.

[1]Reported in 259 N. W. 70.

*Albert Mohn* and *A. J. Rockne,* for appellant.
*Stearns, Stone & Mackey* and *Walter H. Jacobs,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff suffered an injury on the evening of November 8, 1931, between seven and eight o'clock, while riding in an automobile with her husband, who was the driver thereof. When she rested below, the court on defendant's motion directed a verdict against her. She was unsuccessful upon her motion for a new trial, and the case comes to us for review upon appeal from that order. The evidence in her behalf tended to establish the following facts: The husband ditched the car in order to prevent a collision with one of defendant's freight trains at a highway crossing. The near collision occurred at a right angle intersection of the highway by the railroad. Photographs show that the highway was perfectly straight for some distance on each side of the crossing and that the railroad crossing is raised very slightly above the level of the highway. Plaintiff and her husband were approaching the railroad crossing from the west, and on that side of the track there was no sign warning of the presence of the crossing. There was such sign on the east side of the track, but this was concealed from plaintiff and her husband by the presence of a long freight train which was passing over the crossing. Neither plaintiff nor her husband realized that they were approaching the railroad crossing although they had passed over the crossing at least once before that. The evening was dark, but the atmospheric conditions were normal. The color of the freight cars blended with the surroundings. The engine of the train had passed the crossing to the driver's right

so that he did not observe its headlight. The caboose had not yet reached the crossing, and its lights were not discernible to him, at least such did not attract his notice. The automobile was traveling at approximately 35 miles an hour when the driver first became aware of the presence of the freight train. His claim is described by him in his own words, as appears from the record, thus:

"And I noticed nothing at all in the road until just all of a sudden this freight train was passing right in front of me, and, well, it seemed as though we were almost upon the train when I got the glimpse of it, all of a sudden the lights picked up the train going across.

"Why, as we came along my wife sat beside me in the front seat, and as we approached towards Randolph I wasn't sure at that time because the road was rather strange to me, a sign loomed up, I slowed up for it, had my lights toward it and it pointed to Randolph, so then I knew I was on the right road and I kept on going, we took a kind of a little dip and just as I took the dip my headlights flashed on the freight train, it seemed within just a few feet of the car. I slammed the brakes on as hard as I could and the gravel in the road kind of rocked the car and I saw we were going to slide under so I just swung to the ditch and landed within a few feet of the train on the side of the bank and I thought then that we were going to go under so I gave the wheel a big snub and we just rolled in the ditch and we landed on the right side up on the tires with the engine running, lights burning, only we were facing the other direction that we were coming * * *."

Plaintiff in substance and effect supports her husband's claim. It will thus be observed that there was no collision with the train. The sole basis for plaintiff's right of recovery is based upon the theory that the railroad crossing was not properly protected by crossing signs. It is conceded that there was a proper sign on the east side of the track. This, however, was obscured by the presence of the train. Plaintiff's husband claims that his lights were good but is not quite sure whether they would reveal a person 200 feet ahead on a level road.

The single question presented for review may be stated thus: Does ordinary prudence require a railroad company to erect a sign or other warning of the presence of its railroad crossing at grade of a highway in addition to the crossing signs provided by statute? The question is not new. It has been before this and other courts in many cases. In Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31, cases from other jurisdictions were carefully reviewed. It is not necessary to do so again. We have recently had occasion to pass upon an almost identical question in Ausen v. M. St. P. & S. S. M. Ry. Co. 193 Minn. 316, 258 N. W. 511. Reference to these cases should afford a sufficient guide for decision here.

Crossing signs are required and regulated by statute. 1 Mason Minn. St. 1927, § 4733, requires every railway company to maintain "wherever any of its lines crosses a public road, a proper and conspicuous sign indicating such crossing." By L. 1925, c. 336, § 2 (1 Mason Minn. St. 1927, § 4743-2), provision is made for uniform warning signs and the types thereof. The railroad and warehouse commission is "authorized and required to adopt and prescribe uniform warning signs for use at grade crossings * * * which will furnish adequate warning of the existence and nature of such grade crossings and to make regulations as to the place of installation." That section further provides for distinct types of such signs. It is further provided that railroads must erect signs at each grade crossing "hereafter established and at each grade crossing where and when the existing crossing signs are replaced * * *." Id. § 4743-3. If additional signs are deemed necessary, so the statute provides, the commission is authorized "to designate any such grade crossings requiring such additional signs on either or both sides of said crossing." Id. § 4743-4. It becomes the duty of the railway company upon 30 days' notice from the commission to furnish such signs so designated, and "such public authorities shall erect said signs in conspicuous places on said highway on either or both sides of such grade crossings." Id. § 4743-4. Stop signs are also provided for. But here too the commission is authorized to designate the crossings "requiring such additional protection." The railway company must within 30 days after notification furnish

and erect such crossing signs on each side of the crossing. *Id.* § 4743-5. Drivers of vehicles are required to reduce the speed of such vehicles upon approaching such grade crossing "to such a rate that it [the vehicle] can be brought to a full stop in case of necessity before reaching the nearest rail of the railroad track and to cautiously proceed over said crossing at a speed not to exceed ten miles per hour." *Id.* § 4743-8.

It is obvious that the legislature has by statute prescribed a uniform system of crossing signs and the manner of their placements. In the instant case no showing was made that since the enactment of this law the then existing sign of the railway company had been replaced or that the commission had ordered it to furnish crossing signs and that the company had failed so to do. The legislature having made or provided for adequate rules and regulations respecting crossing signs and warnings, it is not for us to conjure others. We should not interfere. The title of the act is: "An act providing for the manner of constructing crossings, and for the construction and maintenance of certain signs at the crossings of railroads, streets and public highways, and regulating the use of such crossings by the public, and for the establishment, vacation and re-location of such crossings and prescribing penalties." This indicates a clear intention on the part of the legislature to occupy the entire field. We are sustained in this view by State v. N. P. Ry. Co. 176 Minn. 501, 507, 223 N. W. 915, 917. There the court had for consideration § 4743-14, which relates to the power of the commission to order constructed overhead or underground crossings. Said the court:

"We reach the conclusion that the legislature intended to and did confer upon the commission power to determine all questions relating to the matter of railroad crossings."

In State ex rel. City of St. Paul v. M. St. P. & S. S. M. Ry. Co. 190 Minn. 162, 251 N. W. 275, the same section was under consideration. The second paragraph of the syllabus reads:

"The statutory jurisdiction (1 Mason Minn. St. 1927, § 4743-14) of the railroad and warehouse commission over railroad crossings

extends to the reconstruction of an old bridge over a highway. It is not limited to the original construction attendant upon separation of grades."

Against the charge there made that the statute under consideration should be strictly construed, the court said in the first paragraph of the syllabus:

"However radical its change, a statute is not to be so narrowed by construction as to defeat its purpose simply because it is an innovation on common law principles."

In behalf of plaintiff it is claimed that circumstances may be such as to require more than statutory precautions. Our attention is directed to Shaber v. St. P. M. & M. Ry. Co. 28 Minn. 103, 9 N. W. 575. It is obvious to us that what the court was there considering was adequate signs to travelers crossing the railroad of the presence of the track so as to avoid collision with *approaching* trains, not trains actually occupying the crossing. Other cases of similar import are Zenner v. G. N. Ry. Co. 135 Minn. 37, 159 N. W. 1087; Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440. We do not think the reasoning employed in these cases now controlling. The crossing statute (L. 1925, c. 336) has vested in the commission plenary power and authority to act.

Nor does the case of Wicker v. North States Constr. Co. Inc. 183 Minn. 79, 235 N. W. 630, afford plaintiff any relief. This is known as the concrete mixer case. It is clearly distinguishable from the case at bar because there the mixer was left in the highway where it had no business being. Here the train was where it had a right to be. Under the statute, leaving the mixer upon the highway was a negligent act. The mere running of the train upon its own track is not a negligent act. Nor is the running of the train here charged as a basis for recovery. As heretofore stated, the only claim upon which plaintiff relies is lack of adequate crossing signs.

In addition to the cases cited from other jurisdictions in the Crosby and Ausen cases, supra, are Gallagher v. Montpelier & Wells River R. Co. 100 Vt. 299, 137 A. 207, 52 A. L. R. 744, and

Gilman v. Central Vermont Ry. Co. 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102.

We are of the opinion that the learned trial court was right. The order is affirmed.

LORING, JUSTICE (dissenting).

The question presented by this appeal is whether or not ordinary prudence requires a railroad company to erect a sign warning of the presence of its railroad crossing at grade over a highway in order to protect people riding in automobiles from colliding with a train standing upon or passing the crossing.

The defendant relies chiefly upon Crosby v. G. N. Ry. Co. 187 Minn. 263, 245 N. W. 31, 32, and the cases from other jurisdictions cited therein. In that case this court said [187 Minn. 266]:

"Statutory signals for trains approaching a highway crossing are solely for the benefit of travelers on the highway so as to warn them of approaching trains. They are immaterial when and where, as here, the train is actually upon and occupying the crossing when the traveler arrives. * * * It would seem that a train upon a crossing is itself effective and adequate warning."

A number of cases from outside jurisdictions are cited to the same statement. In the Crosby case, however, there was no lack of warning signs. In addition to the large crossing sign, there was a warning sign 300 feet from the crossing in the direction from which the two young men who were injured were approaching. A careful reading of the Crosby opinion clearly shows that the point which this court was really considering was whether or not the defendant was bound under the circumstances as they existed at that particular crossing to do anything more than provide the ordinary statutory warning. We recognized the rule that circumstances might be such as to require more than the statutory precautions, but held that the situation there under consideration did not require more warning than the statute prescribed. In Shaber v. St. P. M. & M. Ry. Co. 28 Minn. 103, 107, 9 N. W. 575, 577, this court said:

"Whatever precautions a prudent management of the road, with respect to the public safety, would require, it is the duty of the company to take, though they may be in addition to those required by statute, or though there be no statutory requirement on the subject. The specification by statute of certain precautions to be taken is not to be construed as a license to the company to omit other precautions that may be necessary; nor does the silence of the statute as to any particular precaution exempt the company from the duty of taking it, if it be one which proper prudence requires."

It is quite obvious that when railroads first were constructed across highways and the only vehicles operated upon the highways were horse-drawn, there was no danger of the horse-drawn vehicle colliding with or being driven into railroad trains which were actually occupying crossings. The speed of the horse-drawn vehicles was such that they could always be stopped in ample time to prevent their running into a train. Moreover, the horses themselves, even at night, would see the obstruction and avoid a collision. Their position of advantage in front of the vehicle was insurance against their running into an obstacle. The only danger to horse-drawn vehicles was from being struck by approaching trains while they were passing over the crossing. No doubt at that time ordinary care would not require any warning to approaching drivers of the presence of a train other than its occupation of the crossing itself. The first statutes requiring signs to be erected to warn the users of the highway of the presence of the crossing were no doubt passed for the purpose of compelling the railroad companies to give warning of approaching trains. No more was necessary.

The situation has now quite obviously changed and with it the requirements of ordinary care. B. & O. R. Co. v. Reeves (C. C. A.) 10 F. (2d) 329. So have the statutory requirements as I shall presently indicate. Now, according to statistics, something over one-fourth of the highway crossing accidents result from automobiles running into the sides of moving or standing trains. Any automobile driver experienced in country driving knows that until

the direct rays of his lights actually strike the sides of freight cars a standing or moving freight train across a highway is not a conspicuous object at night. This is especially true if the railroad is slightly above the level of the approaching highway. The law requires the direct beams of automobile headlights to be cast below the height of 42 inches at a distance of 75 feet in front of an automobile. With the ordinary car this means that such direct beams must ultimately strike down to the level of the highway and that objects above that point are inconspicuous. If their color is such that it blends readily with the highway or into the horizon, the objects are very unlikely to receive timely recognition. Hence the statutory requirement of tail-lights, reflectors, and in some cases flares. This also indicates the reason that the highway department places its warning signals low enough to be seen by the direct rays of the headlights.

It is a matter of common knowledge that drivers of ordinary prudence travel at night at rates of speed which a few years ago would have been considered imprudent or even reckless. That this may be done with reasonable safety is due in large measure to the diligence of the highway department and of counties in placing signs which warn of any deviation from the normal situation. The diligent placing of such signs has led drivers of ordinary prudence to drive at rates of speed which but for the presence of such warnings would not be considered safe. The almost universal presence of these warning signs has given foundation for reasonably prudent drivers to expect them. This is a matter of common knowledge as well known to the railroad companies as to others, and the whole question before us resolves itself down to whether a driver of an automobile on a dark night must always travel with the expectation that at any moment a freight train may loom up across his path without other warning of its presence than its actual occupation of the entire highway. In other words, if defendant is right, a freight train occupying a railroad crossing is an exception to the general rule that warnings of obstructions may be expected. We have many statutory requirements for the protection of users of our highways. Scarcely one can be mentioned which would not

be dictated by ordinary prudence in the absence of statute. Warnings of obstructions are the well-nigh universal rule. Are crossings wholly obstructed by freight trains to be the exception?

Under usual circumstances a driver at night should be prepared to stop within the range of the illumination cast by his lights. This rule, however, is not an absolute bar to recovery in all cases. If the object which obstructs the highway is of such a character that its color or height blends with the surroundings in such a way that it is inconspicuous even when the driver's lights are functioning properly, we have held that the question of the driver's care may be for the jury. Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; Wicker v. North States Constr. Co. Inc. 183 Minn. 79, 235 N. W. 630. In the case at bar the plaintiff's husband said in substance that the color of the train blended with the color of the road and the surroundings; that he did not observe the train until the direct rays of his lights struck the cars and revealed the train immediately in front of him. That may well be the common experience of drivers in the observation of freight trains.

The defendant was of course entitled to assume that people using the highway would conduct themselves in the manner that persons of ordinary prudence usually do, but if drivers in the exercise of such prudence might be exposed to collision with a freight train, defendant was bound, in the exercise of ordinary care, to warn such drivers of the presence of the railroad crossing. It need not, of course, do more than give effective warning of the crossing. I think in this case the record made it fairly a question for the jury whether the defendant should not at least have erected on the westerly side of its track a conspicuous sign indicating the presence of the crossing. The sign on the other side might have been well enough in the days of horses and buggies to warn of the possibility of approaching trains, but it was utterly futile as a warning to drivers approaching from the west if a freight train was standing or moving upon the crossing. I think that under the circumstances of this case the question of the defendant's negligence was at least one for the jury and that ordinary care might be said by them to require a warning sign. The evidence shows clearly that a sign

similar to that which the company already had on the other side of the track, though of ancient design suitable to the days of horse-drawn vehicles, was much more readily seen and much more conspicuous than the presence of the train itself. I have carefully examined the authorities from other jurisdictions cited by the respondent. Most of them were cited in the Crosby case, 187 Minn. 263, 245 N. W. 31. I do not think them applicable to modern conditions and am not persuaded by their logic.

That the legislature has recognized the changing conditions and that warning signals are now calculated to prevent motor vehicles from colliding with trains is definitely indicated by L. 1925, c. 336. That chapter (not yet applicable to this crossing) requires a sign on each side of the track. It is obvious that if the statutory signs are only for the purpose of warning of the approach of trains, one conspicuous sign at a crossing on either side of the railroad would be sufficient.

The case of Ausen v. M. St. P. & S. S. M. Ry. Co. 193 Minn. 316, 258 N. W. 511, was, like the Crosby case, 187 Minn. 263, 245 N. W. 31, one where there was a conspicuous crossing sign on the side from which the plaintiff was approaching; hence it was unnecessary to pass upon the question of whether ordinary care required the railroad to put up crossing signs on both sides of its track. This is the first case presenting that issue. Now this court has not only gone to the extent of holding that ordinary care does not require signs on both sides, but has reversed its former holdings that ordinary care may demand more than the statutory requirements. With that holding I am not in accord. I do not think the statutes referred to in the majority opinion forbid or relieve the railroad company from taking further precautions dictated by ordinary care.

The plaintiff was a passenger, and the negligence, if any, of her husband is not imputable to her. Whether or not the defendant was negligent was, in my opinion, a question for the jury.

DEVANEY, CHIEF JUSTICE, and HILTON, JUSTICE (dissenting).
We concur in the dissent of Mr. Justice Loring.