**SLOWIK v. CHICAGO, MILWAUKEE, ST. P. & PAC. R. CO.**

No. 2981 Civil.

United States District Court
D. Minnesota, Fourth Division

Jan. 27, 1950.

Irvin E. Schermer, Minneapolis, Minn., Charles T. Hvaas, Jr., Minneapolis, Minn., for plaintiff.

A. C. Erdall, C. O. Newcomb and S. W. Rider, Jr., Minneapolis, for defendant.

DONOVAN, District Judge.

This case was tried to the court and a jury. Plaintiff had a verdict. Defendant moves in the alternative for judgment or for a new trial. The grounds for the motion may be summarized thusly: (1) Defendant was free from actionable negligence; (2) The negligence of the driver of the automobile was the sole cause of the collision; (3) Plaintiff's negligence contributed to the cause of the accident; (4) The verdict is contrary to law and the evidence.

At the trial the evidence developed that at about 12:30 o'clock a. m. on January 3, 1949, Henry Slowik, a brother of plaintiff, called at a home where plaintiff had been visiting for the purpose of taking him to plaintiff's residence. The night was clear. There was no precipitation. The streets were somewhat slippery. According to plaintiff's testimony, the lights and brakes on the car were in good condition. Plaintiff was a passenger in the automobile, sitting in the front seat and to the right of the driver. All windows in the car were closed except the one to plaintiff's right, which was opened approximately one inch from the top. Proceeding along Third Avenue, in the City of Minneapolis, at a speed of about 15 to 20 miles per hour, the automobile approached defendant's tracks which crossed said avenue between First and Second Streets South. At said intersection there was a street light. As the automobile approached the defendant's track plaintiff was looking out of the window to his right towards what has been described as the Janney Semple Hill & Company building. When about thirty feet from the railway track the driver exclaimed, "What is that?", and looking, plaintiff saw defendant's train, consisting of a Diesel locomotive followed by a tank car and a box car, fully occupying and moving over the avenue. Apparently the driver had simultaneously applied the brakes when he gave voice to the exclamation, and the automobile skidded into the side of the tank car.

Defendant's testimony was to the effect that as the train proceeded over the crossing the locomotive headlight was turned on to its full extent, and that the headlight on the opposite end of the locomotive was lighted sufficiently to disclose the presence of the tank car. In addition to this there were other lights on the locomotive described as a red and white marker, and a light along side the steps of the Diesel engine. Defendant introduced evidence showing that one of its switchmen had lighted a flare or fusee, which he was holding in his hand, together with his lantern, and that with these lights he preceded the locomotive over the crossing, and when it had crossed he dropped the flare on the side of the avenue and along the tracks in the direction that the train was moving. Defendant claims the bell of the locomotive was ringing.

Plaintiff contends that defendant was negligent for failing to have signs and signals that would give warning of the presence of the train on the crossing, the lack of which plaintiff contends was the proximate cause of the collision and resulting injuries to him. He testified that he did not hear the bell of the locomotive ringing, and that he had no warning of the presence of the train on the crossing.

At the outset, it is my opinion that the evidence will not permit of a conclusion to the effect that plaintiff passenger was guilty of contributory negligence as a matter of law. Nor can I conclude, on the record of this case, that the collision and resulting injuries to plaintiff were caused solely by the negligence of the driver of the automobile. The court submitted these two questions to the jury, and the jury found for the plaintiff.

The sole question for determination now is whether the court was right in submitting to the jury the claim of plaintiff that

defendant violated statutory law in failing to have proper signs indicating the presence of the tracks and the train thereon, which he claims was the proximate cause of the accident. If the court was in error in charging as above indicated, defendant should have a new trial. The statute provides that "Every railroad company shall maintain, wherever any of its lines crosses a public road, a proper and conspicuous sign indicating such crossings." 15 M.S.A. § 219.06.

Consideration of defendant's motion requires the court to assume as established all the facts that plaintiff's evidence reasonably tends to prove, and there must be drawn in favor of plaintiff all inferences fairly deducible from such facts. Traders & General Ins. Co. v. Powell, 8 Cir., 177 F.2d 660.

The driver of the automobile was not called as a witness. What he saw, or why he did not see the train on the crossing in time to stop before colliding therewith is left wholly to conjecture. The court is of the opinion that the charge it gave, as above quoted, is the law of Minnesota, and when considered in connection with the charge given as a whole by the court, it was proper and is applicable to the facts of the case. Chapter 219 of 15 Minnesota Statutes Annotated, as interpreted by the Supreme Court of Minnesota, includes everything pertinent to the issues raised in the present case. Defendant explains the absence of the grade crossing signs and warnings in the failure of the Railroad and Warehouse Commission to order their installation, citing cases as authority, among which are: Olson v. Chicago Great Western Ry. Co., 193 Minn. 533, 259 N.W. 70; Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N.W. 31; Ausen v. Minneapolis, St. P. & S. S. M. Ry. Co., 193 Minn. 316, 258 N.W. 511; Rhine v. Duluth, M. & I. R. Ry. Co., 210 Minn. 281, 297 N.W. 852; Hickey v. Mo. Pac. R. Co., 8 Cir., 8 F.2d 128.

The case last-cited emphasizes the necessity that plaintiff prove that the negligence of the railroad company was the proximate cause of the accident. If the absence of the warning signs required by said Chapter 219 was not the proximate cause of the accident, plaintiff, of course, could not recover. Inasmuch as Minnesota law is controlling here, resort must be had to the applicable statutes and Minnesota decisions in cases in which the absence of such statutory warning had been considered an act of negligence proximately contributing to the cause of the damage the plaintiff sustained. It therefore becomes necessary to review the evolution of the rule first laid down in Shaber v. St. Paul M. & M. Ry. Co., 28 Minn. 103, 9 N.W. 575, wherein it was held that it was for the jury to say whether the railway's omission to have such a sign amounted to negligence, and whether such omission proximately contributed to the injury, even though it appeared that the person injured was familiar with the crossing.

In Olson v. Chicago Great Western Railway Company, supra, the court limited the broad statement governing liability for failure to erect and maintain warnings at railroad crossings, as expressed in the Shaber case. The Olson case held that statutory signals for trains passing over highway crossings were exclusively for the benefit of travelers on the highway, so as to warn them of approaching trains, and that where a train is actually occupying such crossing when the driver upon the highway arrives, the train is itself effective and adequate warning. Further, that the Legislature conferred upon the Railroad and Warehouse Commission exclusive jurisdiction over all questions relating to the matter of railroad crossings. In the case of Licha v. Northern Pacific Ry. Co., 201 Minn. 427, 276 N.W. 813, 814, which overrules the Olson case, the court, among other things, said:

"The rule was well settled in Minnesota prior to Olson v. Chicago Great Western Railway Co., supra, that a railroad is bound to take such precautions in the management and operation of the railroad as the public safety requires, though they may be in addition to those required by statute or order of the Railroad and Warehouse Commission or though there be no statute or order upon the subject. 5 Dunnell, Minn.

Dig., 2d Ed. & Supps.1932, 1934, 1937, § 8174, cases cited in note 56. This is the universal rule. Note, 71 A.L.R. 369 et seq., where it is said: 'It is generally held that the statutory requirements for safety devices at crossings merely prescribe the minimum of care, and, when the crossing is dangerous and prudence demands it, additional safety devices must be provided to the extent necessary to meet the situation.'

\* \* \* \* \* \*

"The rule as stated still applies unless it has been changed by chapter 336, L.1925 (Mason's Minn.St.1927, §§ 4743-1 to 4743-17 [M.S.A. §§ 219.16–219.30, 219.97]).

\* \* \* \* \* \*

"An examination of chapter 336 discloses that it did not establish a code of regulations for the running of railway trains, nor does it authorize the Railroad and Warehouse Commission to adopt such a code.

\* \* \* \* \* \*

"That the possession of such powers is not susceptible of such a construction is made manifest by the fact that the commission possessed the same powers under L. 1905, c. 280; L.1919, c. 434, as amended by L.1921, c. 500 [M.S.A. §§ 219.14, 219.15].

\* \* \* \* \* \*

"The meaning and effect of the statutes carried forward in chapter 336 were so firmly established by our decision law that we are not free to depart therefrom without legislating judicially. These statutes and the orders of the Railroad and Warehouse Commission had been construed by our decisions, prior to the enactment of chapter 336, L.1925, to prescribe additional minimum requirements in addition to the general duty to exercise due care, and not to constitute an entire code of regulation, superseding and excluding all law in existence at the time of their adoption. Shaber v. St. Paul, etc., Railway Co., supra.

\* \* \* \* \* \*

"Finally, it is claimed by the defendant that, as a practical proposition, a conflict arises between the duties of the company and the requirements of the statute and orders of the Railroad and Warehouse Commission, if it should be required to exercise any care in addition to that prescribed by the statute and such orders. That this contention is without merit has already been demonstrated. In the Shaber Case we pointed out that the general duty to exercise due care and to observe the provisions of the statute exist together. In Grippen v. New York Central R. Co., 40 N.Y. 34, it was said that the duty to exercise due care stands and the statute stands with it and both must be satisfied.

"Whether the accident was proximately caused by defendant's negligence was a question to be determined by the jury."

In Massmann v. Great Northern Ry Co., 204 Minn. 170, 282 N.W. 815, 816, the court emphasized its preference for the rule of the Shaber case, saying: "During the trial of the case the opinion of this court in Licha v. Northern Pacific R. Co., 201 Minn. 427, 276 N.W. 813, was handed down and the plaintiff who had at that time rested her case was allowed to reopen it and present additional testimony in an endeavor to show that the crossing was an extra hazardous one requiring more protection than that offered by the statutory crossing sign erected some years before by the railroad company. The Licha Case reversed Olson v. Chicago Great Western R. Co., 193 Minn. 533, 259 N.W. 70, which took the position that Laws 1925, c. 336, constituted a complete code of regulations superseding and including all law in existence at the time of its adoption relating to warning signals at railroad crossings, and that compliance therewith freed the railroads from any further obligation to protect the crossings by any signals or signs in addition to those prescribed under the code. This court in the Licha Case concluded that the legislature did not intend by c. 336 to so provide. It concluded as do the majority of the courts in this country that if ordinary care requires more than was required under the code that liability would follow if a failure to exercise ordinary care was a proximate cause of injury. In general principle, the Licha

594

Case did not change the law from what it had been prior to the Olson Case; what it did was to change the previous holdings of this court as to the presence of cars across a highway crossing being under all circumstances an adequate notice of the presence of a train, a holding which was apparently unnecessary to the conclusion arrived at in Crosby v. Great Northern R. Co., 187 Minn. 263, 245 N.W. 31, or in Ausen v. Minneapolis, St. Paul & Sault Ste. Marie R. Co. et al., 193 Minn. 316, 258 N. W. 511, since in those cases there were adequate warning signs. In short, the Licha Case applies the principle of ordinary care to all crossings and to all situations relating thereto and holds that the statutory requirements are the minimum duty of the railway company, that ordinary care may require more than the statute and that under special circumstances the mere presence on the crossing of standing or moving unlighted cars such as freight cars may not be adequate warning of the obstruction of the highway."

If there were any doubt as to the intention of Minnesota courts to return to the doctrine of Shaber v. St. Paul etc., supra, it seems to have been resolved against the contention of the defendant in this case by the holding of the court in Wessman et al. v. Scandrett et al., 217 Minn. 312, 14 N.W.2d 445, 446, where Mr. Chief Justice Loring epitomized his strong dissent in the Olson case, reversing the lower court for dismissing the plaintiff-passenger's action, and went on to say:

"However, the negligence of her father could not be imputed to LaVonne, and if the negligence of defendants in failing to have the warning sign which the statute required or which ordinary prudence would require contributed to the injury to La-Vonne she could recover. Setosky v. Duluth S. S. & A. R. Co., 173 Minn. 7, 216 N.W. 245.

"Minn.St.1941, § 219.18 [M.S.A.], Mason St.1927, § 4743-3, provides: "'At each grade crossing in this state hereafter established and at each grade crossing where and when the existing crossing signs are replaced the railway company operating the railroad thereat shall erect and maintain on the highway on each side of the railroad track or tracks and within a distance of 75 feet from the nearest rail, one or more of such uniform home crossing signs.'"

The change in the attitude in the Minnesota court amounts to a return to the reasoning of the dissent expressed in the Olson case, and from which I quote as follows [259 N.W. 73]:

"The defendant relies chiefly upon Crosby v. Great Northern R. Co., 187 Minn. 263, 245 N.W. 31, 32, and the cases from other jurisdictions cited therein. In that case this court said: 'Statutory signals for trains approaching a highway crossing are solely for the benefit of travelers on the highway so as to warn them of approaching trains. * * * They are immaterial when and where, as here, the train is actually upon and occupying the crossing when the traveler arrives. * * * It would seem that a train upon a crossing is itself effective and adequate warning.'

"A number of cases from outside jurisdictions are cited to the same statement. In the Crosby Case, however, there was no lack of warning signs. In addition to the large crossing sign there was a warning sign 300 feet from the crossing in the direction from which the two young men who were injured were approaching. A careful reading of the Crosby opinion clearly shows that the point which this court was really considering was whether or not the defendant was bound under the circumstances as they existed at that particular crossing to do anything more than provide the ordinary statutory warning. We recognized the rule that circumstances might be such as to require more than the statutory precautions, but held that the situation there under consideration did not require more warning than the statute prescribed. In Shaber v. St. Paul M. & M. Ry. Co., 28 Minn. 103, 107, 9 N.W. 575, 577, this court said: 'Whatever precautions a prudent management of the road, with respect to the public safety, would require, it is the duty of the company to

take, though they may be in addition to those required by statute, or though there be no statutory requirement on the subject. The specification by statute of certain precautions to be taken, is not to be construed as a license to the company to omit other precautions that may be necessary; nor does the silence of the statute as to any particular precaution exempt the company from the duty of taking it, if it be one which proper prudence requires.'

\* \* \* \* \* \*

"It is a matter of common knowledge that drivers of ordinary prudence travel at night at rates of speed which a few years ago would have been considered imprudent or even reckless. That this may be done with reasonable safety is due in large measure to the diligence of the highway department and of counties in placing signs which warn of any deviation from the normal situation. The diligent placing of such signs has led drivers of ordinary prudence to drive at rates of speed which but for the presence of such warnings would not be considered safe. The almost universal presence of these warning signs has given foundation for reasonably prudent drivers to expect them. This is a matter of common knowledge as well known to the railroad companies as to others, and the whole question before us resolves itself down to whether a driver of an automobile on a dark night must always travel with the expectation that at any moment a freight train may loom up across his path without other warning of its presence than its actual occupation of the entire highway. In other words, if defendant is right, a freight train occupying a railroad crossing is an exception to the general rule that warnings of obstructions may be expected. We have many statutory requirements for the protection of users of our highways. Scarcely one can be mentioned which would not be dictated by ordinary prudence in the absence of statute. Warnings of obstructions are the well-nigh universal rule. Are crossings wholly obstructed by freight trains to be the exception?

"Under usual circumstances a driver at night should be prepared to stop within the range of the illumination cast by his lights. This rule, however, is not an absolute bar to recovery in all cases. If the object which obstructs the highway is of such a character that its color or height blends with the surroundings in such a way that it is inconspicuous even when the driver's lights are functioning properly, we have held that the question of the driver's care may be for the jury. Olson v. Purity Baking Co., 185 Minn. 571, 242 N. W. 283; Wicker v. North States Const. Co., 183 Minn. 79, 235 N.W. 630. In the case at bar the plaintiff's husband said, in substance, that the color of the train blended with the color of the road and the surroundings; that he did not observe the train until the direct rays of his lights struck the cars and revealed the train immediately in front of him. That may well be the common experience of drivers in the observation of freight trains.

"The defendant was of course entitled to assume that people using the highway would conduct themselves in the manner that persons of ordinary prudence usually do, but if drivers in the exercise of such prudence might be exposed to collision with a freight train, defendant was bound, in the exercise of ordinary care, to warn such drivers of the presence of the railroad crossing. It need not, of course, do more than give effective warning of the crossing. I think in this case the record made it fairly a question for the jury whether the defendant should not at least have erected on the westerly side of its track a conspicuous sign indicating the presence of the crossing." See also Duluth, W. & P. R. Co. v. Zuck, 8 Cir., 119 F.2d 74.

The logic of the dissenting opinion of Chief Justice Loring as last quoted from is so convincing and persuasive that I am adopting it as a clear statement of Minnesota law existing at the time of the accident upon which this case is based.

I realize that there was no fog at the time of the accident we are here concerned with, and I am satisfied in my own mind that if the driver of the car could not see the train on the crossing he perhaps could not be helped by the ordinary saw-

buck or disk sign warning of the presence of the track. On the other hand, a warning signal made up of reflectors or flashing lights, which is the rule rather than the exception where railroad tracks intersect busy streets in metropolitan areas such as Minneapolis, may very well have made an impression on the mind of the driver in time to avoid the accident.

In concluding, it should be noted that the court gave every charge requested by the defendant except such as would amount to a directed verdict against the plaintiff. Said requests included every possible defense that could conceivably be given as a charge by the court in this type of case. The court granted defendant's request in the foregoing respects because of a strong feeling that under ordinary circumstances a driver of an automobile should be able to see a railroad train proceeding over a highway. Hyatt on Trials, § 1779, page 1770, expresses the thought this way: "When to look is to see, testimony that the plaintiff did look and did not see ought to be disregarded." That was the rule approved in the Crosby, Ausen and Rhine cases, now changed by the return to the rule expressed in the Shaber case.

The Federal Rules of Civil Procedure, 28 U.S.C.A., afforded ample opportunity for the defendant to avail itself of the presence of the driver of the car in this case, without committing itself to calling him as its witness. Third-party impleader may well have been a means of subjecting the driver to cross examination under Rule 14. I merely mention this for the reason that defendant's counsel suggested that it was plaintiff's duty to call the driver as a witness at the trial.

In each of defendant's briefs counsel earnestly contend that the record did not contain evidence of causal connection between any claimed negligence of the defendant and the happening of the accident, pointing out that the causal connection between the absence of the warning signs and signals and the accident was not produced by plaintiff, but defendant overlooked the presumption of negligence that arises out of the violation of the statute requiring the presence of such crossing signs and warning.

Despite the strong case made by the defendant, I am satisfied that the court properly submitted the issues to the jury. The jury has spoken as the triers of the facts and the court should not substitute itself for the jury, under such circumstances.

The motions of the defendant must be, and they hereby are denied. It is so ordered.

Defendant may have an exception.