15722

**HALL v. BURG**

(33 S. E. (2d), 401)

*Mr. John E. Edens* and *Messrs. Tompkins & Tompkins,* all of Columbia, S. C., Counsel for Appellant,

*Mr. N. A. Turner* and *Mr. C. T. Graydon,* both of Columbia, S. C., Counsel for Respondent,

March 14, 1945.

Mr. Associate Justice Stukes delivered the Opinion of the Court, with Mr. Associate Justice Oxner filing a Dissenting Opinion concurred in by Mr. Associate Justice Taylor. The Opinion of the Court follows:

Appellant brought suit for personal injuries received in an accident on the seven hundred block of Lady Street in the City of Columbia. The complaint contains specifications of negligence relating to the manner of the parking of re-

spondent's trucks on the street. In the specifications there was cited Section 1623 (38) of the Code of 1942, and also certain ordinances of the City of Columbia relating to parking. Respondent moved to strike as irrelevant certain of them, those designated (a), (b), (c), (d), (e), (i) and (j).

The motion was heard in the Circuit Court and an order was passed wherein it was said that the specifications of negligence sought to be stricken were based upon the State law regulating highways, referred to as the Motor Vehicle Safety Statutes. The Court held that where there are conflicting municipal ordinances regulating traffic, they prevail over contrary State laws thereabout. Code, Section 7233, was cited, which provides as follows: "The city councils and town councils of the cities and towns of the State shall, in addition to the powers conferred by their respective charters, have power and authority to make, ordain and establish all such rules, by-laws, regulations and ordinances respecting the roads, streets, markets, police, health and order of said cities and towns," etc.

The Court proceeded upon this reasoning and granted the motion in its entirety, striking the designated specifications of negligence from the complaint.

This appeal therefrom makes two questions, first upon the main conclusion of the lower Court, just stated, and second, whether under such conclusion specifications (d), (e), (i) and (j) were properly stricken, and appellant has subdivided the latter question into two, which, however, will be treated together.

Reference to the origin of Section 1623 (38) subtitled "Stopping and parking", discloses that it was Section 11 of Article III of Act No. 845, approved April 29, 1938, 40 St. at Large, p. 1719, entitled "An Act to Prescribe the Equipment, Size and Weight Limitations of Motor Vehicles and Equipment of Other Vehicles on the Highways of This State; to Provide Liability in Certain Cases

of Illegal Operations and to Otherwise Regulate the Use of the Said Highways; to Provide for the Enforcement of the Provisions of the Act, and to Prescribe Penalties for Violations Thereof." Its object was the comprehensive regulation of truck traffic on the highways of the State and consideration of it and the related laws existing at the time of its passage is convincing that it was not intended by the General Assembly to thereby alter the vehicle-parking ordinances of the municipalities of the State, or to impinge upon the longstanding power of a municipality to legislate upon that subject with respect to streets within its corporate limits which are not State Highways. It does not appear that the seven hundred block of Lady Street of the City of Columbia is a part of the State Highway System designated by law.

The opinion in *City of Ellisville v. State Highway Commission,* 1939, 186 Miss., 473, 191 So., 247, 277, contains apt and appropriate language as follows: "We may more safely rest our conclusion upon the fact that the regulation of traffic, including the parking of automobiles, is an ordinary power of police generally exercised by municipalities as regards all the streets within their boundaries, and since the municipalities are naturally and ordinarily vested with this power, a legislative intent to take it away and confer it upon some other authority must be clearly expressed. * *. * " See the annotation upon the general subject in 144 A. L. R., beginning at page 307.

In *Owens v. Owens,* 193 S. C., 260, 8 S. E. (2d), 339, 342 (the parking meter case), this Court recently said: "It is provided in the charter of the city (Columbia), that 'The said Mayor and Alderman shall have, and they are hereby vested with, full and ample power, from time to time, under their common seal, to make all such ordinances, rules and regulations, relative to the streets and markets of the said city, as they may think proper and necessary, and to estab-

lish such by-laws, not inconsistent with the laws of the land, as may tend to preserve the quiet, peace, safety and good order of the inhabitants thereof.' 14 Stat., page 572."

In the opinion just cited Code Section 7233, quoted above, was also referred to and earlier pertinent cases were cited to the same general effect.

There is no comfort to appellant's contention in this respect in *Lynch v. Pee Dee Express,* 204 S. C., 537, 30 S. E. (2d), 449, 451, cited by him, for there was no issue in that case upon the applicability of the State statute; there the locus of the accident was a city street in temporary use as a State highway, a detour for the latter; and finally, it was found that "the quoted ordinance is (was) substantially the same as the State law" which was invoked (1942 Code Sec. 1616(21)).

It is, therefore, held that there was no error in striking from the complaint the reference to the State statutes, but, as indicated above, the order under appeal went further and struck out other specifications of negligence, which are here reproduced:

"(d) That the defendant by his agents and servants parked two trucks on the seven hundred block of Lady Street in a manner that was negligent and careless and which was calculated to obstruct the highway at the time and under the conditions recited, and all of which caused the serious and everlasting injuries sustained by the plaintiff.

"(e) That the defendant failed to have his trucks lighted or to give any notice to the traveling public that such trucks were extending out into the highway and by reason thereof the plaintiff was injured.

"(i) That the plaintiff is informed and believes that it has been customary with the defendant, his agents and servants, to park their trucks in the manner herein alleged, all of which the defendant was informed of and acquiesced under, and that such parking was dangerous or calculated to be dangerous.

"(j) That the defendant failed to provide adequate parking places for his trucks and other moving equipment and parked and permitted his agents and servants to park the same all over the street as herein alleged, and should have known that the same was calculated to be dangerous and would probably cause a serious injury to the traveling public as was done to the plaintiff."

The allegations of negligence contained in the foregoing quotation do not depend upon State statutes and we think were improvidently stricken from the complaint, certainly so upon the stated ground on which they were attacked. In this particular, the order appealed from is reversed.

The order of the Court of Common Pleas is accordingly affirmed insofar as it struck from the complaint as irrelevant the specifications of negligence contained in the complaint which were designated (a), (b) and (c), but it is reversed insofar as it relates to specifications (d), (e), (i) and (j).

Affirmed in part; reversed in part.

MR. CHIEF JUSTICE BAKER and MR. ASSOCIATE JUSTICE FISHBURNE concur.

MR. CHIEF JUSTICE OXNER, dissenting in part:

The power of a municipality to enact ordinances governing the parking of motor vehicles, and otherwise regulating traffic conditions on its streets, when not inconsistent with the statutory law of the State, is conceded. The determination of the principal question on this appeal depends upon the construction of Section 11, Article III, of Act No. 845 of the Acts of 1938, 40 St. at Large, Page 1719, which is as follows: "When stopped or parked for any purpose on or along any highway having a curb any or every truck, truck tractor, trailer, or semi-trailer shall be stopped or parked so that all wheels on the right side of each such vehicle shall be within eighteen inches of the curb and where such highway does not have a curb such vehicle shall stop or park so

that all wheels shall be off or clear of the paved or hard surface roadway."

If the foregoing section applies to all streets within a municipality, the allegations of negligence relating to its violation should not be stricken. The lower Court held: "While the definition of highways under the State acts is sufficient unquestionably to include streets and public roads, the statutes are subject to the construction that they do not include streets within a municipality where such municipality has passed appropriate ordinances regulating traffic within its limits." A majority of this Court has concluded that the Act of 1938 "was not intended by the General Assembly to thereby alter the vehicle-parking ordinances of the municipalities of the State, or to impinge upon the longstanding power of a municipality to legislate upon that subject with respect to streets within its corporate limits which are not State Highways." It will be observed that the lower Court held that the Act did not apply to any streets within a municipality, while in the opinion of Mr. Justice Stukes it is stated that the Act applies to streets within a municipality which constitute a part of the State Highways. I am unable to find any justification in the Act for either interpretation.

In Article I, Section 1 (q) of the Act, the word "highway" is defined as follows: "Any public road, street, avenue, alley or boulevard, bridge, viaduct or trestle and the approaches thereto, within the limits of the State of South Carolina."

It seems to me that the foregoing definition is clear and unambiguous. Every street or public road within the State is included, whether within or without a municipality. When the quoted section with reference to parking is considered in connection with this definition, I am unable to see any basis for excluding streets within a municipality which are not a part of the State Highway system.

In the same section subdivision (o), the words "local authorities" are defined as follows: "Every county, municipal

and local board or body having jurisdiction over, and responsibility for the maintenance of, any highway or street other than State Highways."

This Act regulates the equipment, size and weight of motor vehicles other than private passenger motor vehicles. Section 10, Article III, which is the section preceding the parking section, authorizes the Highway Department "with respect to State Highways and local authorities with respect to highways under their jurisdiction," to prescribe under certain circumstances "loads and weights and speed limits lower than the limits prescribed in this and other laws," and further authorizes such authorities, whenever in their judgment it is "necessary to provide for the public safety and convenience," to regulate or prohibit the operation of motor vehicles on the highways for limited periods. To this section there is a proviso to the effect that "no limitation shall be established by any county, municipal or other local authorities pursuant to the provisions of this Section that would interfere with or interrupt traffic as authorized hereunder over State Highways" unless such limitations have been first approved by the State Highway Department. From this section it clearly appears that it was the legislative intent that the Act should apply within a municipality, as, otherwise, there would have been no necessity for vesting in the local authorities the power therein mentioned. It will be further observed from the sections of the Act to which I have referred, that when the General Assembly intended for any portion of the Act to apply only to State Highways within the jurisdiction of the municipality, it was expressly so stated.

In 1937 the General Assembly passed an act (Act No. 175 of the Acts of 1937, 40 St. at Large, Page 222), entitled "An Act to Restrict and Limit the Use of Highways by Drivers and Pedestrians; to Regulate Traffic on Highways; to Define Certain Crimes in the Use and Operation of Vehicles; to Require Uniform and Safe Driving Prac-

tices; to Require Compulsory Accident Reports; and to Provide for Enforcement of This Act and Penalties for Violations." The definitions of the words "highway" and "local authorities" in this Act are identical with those contained in the Act of 1938. Among other provisions contained in the Act of 1937, are the restrictions on the speed of motor vehicles. Under Section 3 local authorities are authorized under certain circumstances to alter said speed limits except on "State Highways or streets used as such." Under Section 13, Subdivision (d), local authorities are also authorized to regulate turning at intersections within their jurisdiction, except on "State Highways or streets used as such." It, therefore, appears that it was intended that the Act of 1937 should also apply within municipalities except in those instances where the power to make different regulations was vested in local authorities, and that where the General Assembly intended to make a distinction between streets within a municipality used as State Highways and those not so used, such distinction was clearly expressed.

If the parking section does not apply to streets within a municipality which are not State Highways, I think it follows that the other parts of the Act do not apply. This would permit the operation of motor vehicles on such streets without the various safety regulations provided in the Act. I do not think the General Assembly contemplated leaving these various regulations solely to local authorities. It was realized that due to unusual conditions in various localities, local authorities should be empowered to change these regulations in certain particulars, and they were empowered to do so. Assuming that the regulation of parking within a municipality should have been left solely to such local authorities on account of peculiar local conditions, I do not feel that we are at liberty, by judicial construction, to interpolate in the Act an exception which the General Assembly has not seen fit to make. The evident purpose of the two Acts was to establish and maintain, as nearly as prac-

ticable, a uniform system of regulations so as to better acquaint and familiarize the traveling public with the system, and thereby render traffic less hazardous.

I think it was intended that all provisions as to parking mentioned in these Acts should be of general application, but realizing that additional regulations might be necessary, the General Assembly authorized the Highway Department to promulgate same as to State Highways. Section 6006 of the Code of 1942 provides: "The highway department is hereby authorized and empowered to promulgate rules and regulations providing for parking or leaving vehicles on or along state highways and all such rules and regulations shall have the full force and effect of law."

It will be observed that the foregoing section applies only to State Highways, and no doubt it was contemplated that any additional regulations as to parking on streets not within the State Highway system should be done by the various municipalities, but such further regulations by municipal authorities must not conflict with those contained in these Acts. Section 7233 of the Code of 1942, empowering municipalities to enact ordinances respecting roads and streets, contains the following proviso: "Provided, that such rules, by-laws and ordinances shall not be inconsistent with the laws of this State."

For the purpose of the foregoing discussion I have assumed that there is a conflict between the statutory law and the ordinance of the City of Columbia with reference to parking, but the correctness of this assumption is doubtful. The only material difference between the two as applied to parking on the street in question is that the statute fixes a maximum distance of eighteen inches from the curb, while the ordinance fixes a maximum distance of twelve inches.

I think the lower Court should have refused the motion to strike in its entirety.

Mr. Associate Justice Taylor concurs.