15755

FLOWERS v. SOUTH CAROLINA STATE HIGHWAY DEPT.

(34 S. E. (2d), 769)

*Messrs. John M. Daniel,* Attorney General, and *M. J. Hough* and *T. C. Callison,* Assistant Attorneys General, all of Columbia, S. C., Counsel for Appellant,

*Messrs. D. Carl Cook,* of Hartsville, S. C., and *Mozingo & Watts,* of Darlington, S. C., Counsel for Respondent,

July 20, 1945.

MR. ASSOCIATE JUSTICE OXNER delivered the majority Opinion of the Court.

I am not persuaded that the trial Judge erred in submitting the issue of contributory negligence to the jury.

There was no motion for a nonsuit or directed verdict on the ground that there was no evidence tending to show negligence on the part of appellant. But if such motion had been made, I do not think it could have been granted. Under Section 1623 (38) of the Code of 1942, the driver of appellant's truck was required to park it so that all wheels on the right side would be within 18 inches of the curb. According to respondent's testimony, the truck

was parked at an angle of 35 to 40 degrees, with the rear of the truck extending within several feet of the middle of the street. Respondent's testimony as to the manner in which this truck was parkd is corroborated to some extent by one of appellant's witnesses, a policeman of the town of Darlington, who arrived at the scene a few minutes after the accident He testified in part as follows:

"Q. And Barney,· did you testify that the right front wheel of that truck was up on the curb when you got there? A. Yes.

"Q. Now, was that at an angle to some extent leading from the curb? A. Yes, just a little angle.

"Q. So, wherever the truck was parked before, it was hit by the automobile and before it went into the position where you saw it, it was still further out in the highway, it had to be if it went on into the curb? A. Yes.

"Q. Now, the front wheel was how far on the curb? A. It was just sitting up on the curb.

"Q. How was the diameter of the wheel on the truck, approximately? A. From 24 to 28 inches.

"Q. Then, before it went up on the curb that is 24 to 28 inches further out in the street the back end of the truck had to be? A. Yes.

"Q. So, the truck eight or nine feet and 24 to 28 inches, which is about two or two and a half more, that would be ten or eleven feet out, would it not? The back when it was down on the curb, the wheel had to go that far to go on.the curb? A. Yes, but I don't know just how far it was from the curb before it went up.

"Q. But, however far it went on the curb, it had to come from some distance back? A. Yes.

"Q. So, it was that much further back in the street,· was it? A. Yes." (The driver of the truck stated that he left the truck in gear but the brakes were not on.)

The question for determination, therefore, is whether respondent has shown that there was no negligence on her part

contributing as a proximate cause of her injuries. She and her son, the driver of the car, both of whom were on the front seat, testified that they did not see the truck before the collision. Can it be said as a matter of law that in the exercise of ordinary care they should have seen this truck in time to have avoided the collision, or can more than one reasonable inference thereabout be drawn from the testimony, requiring submission of this issue to the jury? The night was dark. The truck was parked at a distance of approximately 65 feet from a street intersection where there was a street light. The driver of respondent's car testified that the street light was "up in a big thick tree". The following appears in the testimony of Mr. Funderburk, appellant's maintenance superintendent: "Q. And the overhanging limbs of this tree almost come out and touch this light, do they not? A. Yes, I believe it does." There were a number of trees along Pearl Street. Respondent's daughter testified that "there was a big oak tree there and it is still there, the limbs hung down and it had the truck completely hidden." She further testified that "it (the truck) was all covered over and the light was way back of us and the light put a reflection where you could not see under that tree." The driver of respondent's car further testified, "you can't see something else that has no light on it in the dark shadow of a tree." It further appears that Pearl Street is a black "asphalt-treated street" and that the color of the truck was also black. In the rear of the truck parked in question there was a spreader which extended across the truck and protruded beyond the body about one foot on each side. Appellant's construction superintendent testified as follows: "The spreader sticks out approximately one foot past the edge of the body. It seems as if this car, the way it looked on the car on the windshield the car turned out from behind and hit that spreader." Just before the collision respondent was meeting another car which was "about a block and a half away." Pearl Street constitutes a part of one of the

main arteries of travel between Darlington and Hartsville upon which there is very heavy traffic.

The driver of respondent's car, although required to exercise ordinary care in keeping a proper lookout, had a right to assume, in the absence of any circumstances which would reasonably give notice to the contrary, that the street would not be partly blocked with vehicles in violation of the statutory law of the State. There existed, according to respondent's testimony, an unusual and unexpected hazard in the street. As stated in *Oakman v. Ogilvie,* 185 S. C., 118, 193 S. E., 920, 923, "Every traveler on the highway, exercising due care himself, in the absence of any circumstances which reasonably should put him on notice to the contrary, is entitled to assume, and to act upon the assumption, that others using it in common with him will exercise reasonable care." To the same general effect see *Lowie v. Dixie Stores, Inc.,* 172 S. C., 468, 174 S. E., 394.

Are we able to say, as a matter of law, that the explanation of the driver of respondent's car was untrue or impossible? If not, then it was for the jury to determine its truth and probability. I think that under all the circumstances the issue of negligence on the part of the respondent and the driver of her car was properly submitted to the jury. The color of the truck blended with that of the street. There was testimony from which the jury could reasonably infer that the effect of the illumination from the street light was partially destroyed by the limbs of the trees; that the limbs of the trees further obstructed the view of the parked truck; that the spreader extending beyond the width of the truck added to the hazard; and that while the lights of the approaching car did not blind the driver of respondent's car, his attention just before the collision was diverted by the car that he was meeting. Although there is no statutory requirement that trucks parked on the street in question should display a red light on the rear, and without in-

timating any opinion as to whether under the peculiar circumstances presented ordinary care at common law would require the display of such lights, I think the absence of such rear lights was a circumstance to be considered by the jury in determining whether there was negligence on the part of respondent. Although the driver of the truck in question was positive in his testimony that such rear lights were burning, this testimony is contradicted by that of the police officer who testified for appellant. The requirement in this State that motor vehicles parked on the road at night shall under certain circumstances display a red light on the rear ' is a legislative recognition of the inherent danger of vehicles being parked along unlighted streets or roads without rear lights. While it is true that Pearl Street was not an unlighted street, yet the jury could have concluded that the trees so obscured the light as to almost have the effect of an unlighted street at this point.

Although the driver of respondent's car may have been negligent in diving in or near the middle of the street, under the case of *Young v. City of Camden,* 187 S. C., 414, 198 S. E., 45, 49, I do not think it can be said as a matter of law that such contributed as a proximate cause of the collision. That case involved an action by a motorist against the City of Camden for personal injuries sustained when his automobile collided at night with a dome-shaped traffic marker about ten inches high and about a foot and a half wide at its base, which was set in the center of a street intersection. The lower Court granted a nonsuit upon the ground that the plaintiff was guilty of contributory negligence, resting its conclusion largely upon the fact that the plaintiff violated an ordinance of the City of Camden which required that one driving an automobile must drive to the right of the center of the street. In disposing of the contention of contributory negligence upon his ground, the Court, speaking through Mr. Justice Fishburne, said: "The question, whether the appellant's violation of the city ordinance, if he violated it, was a

proximate contributing cause of the injury in question, depends, therefore, upon the question whether the appellant in driving on the left of the center, if he did so, ought reasonably to have anticipated, as a natural and probable consequence of his negligence in that respect, that his automobile would collide with the silent policeman. Doubtless, the appellant might reasonably have anticipated that, as a natural consequence of his act, he or his car might be injured by others legitimately using that side of the street; but we think it cannt be held as a matter of law, that a reasonably prudent man, situated as the plaintiff was just before the accident, would have anticipated that as a natural consequence of his negligent act, he would collide with a silent policeman, the presence and location of which was unknown to him, and which was unlighted, and hardly distinguishable from the pavement itself."

The case of *Lipford v. General Road & Drainage Construction Co.*, 118 S. C., 358, 110 S. E., 405, to some extent sustains the conclusion which I have reached. There the plaintiff's automobile collided at night with the rear of the defendant's truck loaded with a concrete hopper. The truck was parked at an angle without lights on the edge of the concrete road. The truck and hopper were of the same color as the concrete and the plaintiff did not observe the truck until the collision occurred. Defendant contended that there was no evidence of negligence on its part and that the undisputed testimony showed that the accident was caused by the negligence of plaintiff. The Court held that the testimony was susceptible to more than one reasonable inference and that it was proper to submit these issues to the jury. Also, see *Ackerman v. One Mack Truck et al.*, 191 S. C., 74, 3 S. E. (2d), 684.

The foregoing conclusion is also supported in principle by the following cases from other jurisdictions: *Murphy v. Hawthorne*, 117 Or., 319, 244 P., 79, 44 A. L. R., 1397; *Morehouse v. Everett*, 141 Wash., 399, 252 P., 157, 58 A.

L. R., 1482; *Tierney v. Riggs,* 141 Wash., 437, 252 P., 163; *Central Surety & Ins. Corp. v. Murphy,* 10 Cir., 103 F. (2d), 117; *Wicker et al. v. North States Const. Co., Inc.,* 183 Minn., 79, 235 N. W., 630, 632. In the last-mentioned case the Court made the following pertinent observation. "If human conduct was perfect, we would of course have higher standards and fewer accidents, but the trouble is that the law makes some allowances for human frailties and hence uses the conduct of an ordinarily prudent person as a standard; and just what an ordinarily prudent person would do under the circumstances here involved must be solved by the composite judgment of the jury."

I am not unmindful of the fact that the ordinary rule to the effect that the burden of proving contributory negligence is upon the defendant does not apply in this case and that under the statute authorizing suit against appellant, the burden rests upon the plaintiff to show that her own negligence did not contribute as a proximate cause of her injury. However, the answer to the question under consideration does not depend so much upon the burden of proof, but whether more than one reasonable inference can be drawn from the facts proven.

In passing on the testimony, under the well-settled rule, I have considered it in the light most favorable to respondent. Much of the testimony which I have stated is flatly contradicted by strong evidence offered by appellant. In fact, the record is full of contradictions and some confusion, but this Court is not empowered to pass upon the credibility of the witnesses.

I am unable to agree with so much of the opinion of Mr. Chief Justice Baker as holds that the testimony is insufficient to show that the respondent did not negligently contribute to her injury as a proximate cause thereof. I think the lower Court was correct in refusing the motions for nonsuit and directed verdict on all grounds.

The conclusion which I have reached makes it necessary to consider certain other exceptions which have not been discussed. It is contended that the trial Judge erred in instructing the jury as to the elements of damage which the jury could consider and also erred in stating the rule as to future or prospective damages. I think the exceptions relating to the charge should be overruled under the cases of *Robinson v. Town of St. Matthews,* 89 S. C., 30, 71 S. E., 234; *Shramek v. Walker,* 152 S. C., 88, 149 S. E., 331; *Ford v. A. A. A. Highway Express,* 204 S. C., 433, 29 S. E. (2d), 760. It is further contended that the trial Judge erred in not granting a motion for a new trial on the ground that the amount of the verdict was excessive. I think this exception is without merit.

This opinion, having been concurred in by a majority of the Court, it is the judgment of this Court that all exceptions be overruled and the judgment of the lower Court affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.

MR. CHIEF JUSTICE BAKER (dissenting) :

Respondent brought her two actions against appellant, one for damages to her automobile, the other for personal injuries, when her automobile in which she was riding was driven into and against a truck of appellant parked on Pearl Street in the City of Darlington. These cases were by agreement tried together, resulting in verdicts in favor of respondent for the full amounts demanded, to wit, $326.20 and $4,000.00, respectively. In our discussion of the issues raised by this appeal, we will treat the cases as one.

The authority to sue this agency of the State Government is contained in Section 5887 of the Code of 1942, subdivisions (1) and (2), reading in part:

"(1) Any person * * * who may suffer injury to his or her person or damages to his, her or its property * * * by reason of the negligent operation of any vehicle or motor

vehicle in charge of the state highway department while said vehicle or motor vehicle is actually engaged in the construction or repair of any of the said highways, may bring suit against the state highway department for the actual amount of said injury or damage * * *.

"(2) Any person * * * bringing a suit against the state highway department must allege and prove that he, she or it did not bring about the injury by his, her or its own negligence, nor negligently contribute thereto * * *."

The complaint of the respondent contained the necessary formal allegation that she did not bring about the injury by her negligence, nor negligently contribute thereto; and paragraphs 4 and 5 thereof are couched in the following language:

"IV. That the said truck was negligently and carelessly operated as above set forth and as hereinafter set forth, and was a motor vehicle in charge of the South Carolina State Highway Department, which was actually engaged in the construction and repair of one of the Highways in charge of the South Carolina Highway Department.

"V. That the wounds, bruises, injuries, pain, suffering, permanent injuries, loss of time and money paid for medical attention and other damages were caused by and due as a direct and proximate cause of the negligent operation of said truck above referred to, in charge of the South Carolina State Highway Department, actually engaged in the construction and repair of the said defendant, in the following particulars, to wit:

"(a) In parking said truck at nighttime, without lights, on the main-traveled portion of said Street.

"(b) In parking said truck in a careless, negligent and unlawful manner at the time and place.

"(c) In failing to use proper care in parking said truck so as to avoid the collision with the car in which the Plaintiff was riding.

"(d) In parking said truck on an unlighted street, without lights thereon.

"(e) In parking said truck with the front away from the curbing and the rear of said truck out into the main portion of said street, so that the automobile of the plaintiff could not pass the same without colliding therewith and causing the injuries above mentioned.

"(f) In that the driver of said truck did not exercise reasonable caution so as to avoid parking, stopping and leaving said truck, at the time and place in question, in such a position on said street, as to avoid undue hazard and inconvenience to other users of said street and highway."

The appellant demurred to the complaint (1) on the ground that it shows on its face "that at the time of the alleged injury and damage the defendant's (appellant's) truck was parked in the nighttime on Pearl Street in the City of Darlington and was not then and there being operated upon or engaged in the construction or repair of any highway"; and (2) that Section 5891 (5), Code 1942, expressly relieves appellant of any liability for the injuries and damage of which respondent complained.

The demurrer was overruled, and appellant alleges error.

In passing upon a demurrer to a complaint for its alleged failure to state a cause of action, the allegations of the complaint must be taken as true. For this elementary rule, citation of authority is unnecessary.

Paragraph 4 and 5 of the complaint, hereinabove quoted, liberally construed aver that the truck complained of was at the time actually engaged in the construction and repair of one of the highways in charge of appellant, and hence the first ground of the demurrer was properly overruled. Appellant's second ground would have to be sustained if respondent's injury had arisen out of the construction, the reconstruction or the maintenance of Pearl Street, in the City of Darlington, which street is included in the State Highway system, but there is no such contention on the part of

the respondent. Therefore, the limitation of liability of the appellant as contained in Section 5891 (5) of the Code is not apposite. See *Bell v. State Highway Department*, 204 S. C., 462, 30 S. E. (2d), 65.

Without waiving the demurrer, the appellant answered, denying that the law as contained in Section 5887 of the Code was applicable; and the third paragraph of the answer reads as follows: "That answering the third, fourth, fifth, sixth and seventh paragraphs of the complaint the defendant alleges on information and belief, that on November 6, 1942, its Chevrolet truck was properly parked in the nighttime at the curb on Pearl Street in the City of Darington when an automobile, the property of the plaintiff was driven by her son, Clarence W. Flowers, down said street in a careless and negligent manner, and under her direction and control, at a high and reckless rate of speed, especially at the time and place, a congested highway, and thus operated said automobile crossed the intersection of Pearl Street and Edwards Avenue and ran with great force into the rear of the truck of the defendant, parked as aforesaid, and knocked it into the rear of another car and onto the sidewalk of said street and damaged said truck in the front and rear thereof, and that such injuries and damages plaintiff then and there suffered and received were due solely to the manner in which said automobile was operated, as aforesaid."

Upon a trial of the case, at the close of respondent's testimony, the appellant made a motion for a nonsuit, which motion was refused. This motion was predicated upon substantially the same grounds as was a motion for a directed verdict at the conclusion of the testimony, except for an additional ground, which has hereinbefore been decided contrary to the contention of the appellant in passing upon the second ground of its demurrer. This motion was likewise refused.

It being conceded that respondent is bound by any negligence on the part of her son, Clarence W. Flowers, in the operation of her automobile at the time she suffered her damage and injury, it is necessary that we set out only the first two grounds of the motion, which are:

"1. That the evidence shows, and there is no other reasonable inference to be drawn therefrom that defendant's trucks were parked in the nighttime on Pearl Street in the town of Darlington and were not actually engaged in the construction, maintenance or repair of a highway at the time Plaintiff's alleged injuries and damage occurred.

"2. That the evidence shows, and there is no other reasonable inference to be drawn therefrom, that plaintiff's automobile was driven by her son and that his negligence was the sole or contributing cause of the injuries and damage alleged in the complaint."

In passing upon the exceptions alleging error in refusing the motion for a nonsuit, and the motion for a directed verdict, it will require that we discuss the testimony adduced upon the trial of the case somewhat at length, especially as to the second ground.

On the evening of the accident under discussion, two trucks of appellant which were being used in improving or repairing the State highway near Society Hill, and in transporting employees to and from the work, were, before reaching their destination, the Darlington County maintenance shop situate near the western end of Pearl Street, in Darlington, temporarily parked on said Pearl Street opposite but across the street from a boarding house, while the drivers of the trucks and some other employees went into the boarding house for the purpose of engaging rooms for the night. This was a floating crew of workers. These employees had just been transferred to the Darlington section, and had not made arrangements for rooms in which to stay at night when they came in from work, and were engaging rooms at the first opportunity, and before taking the trucks to the

maintenance shop of appellant. The most direct route from Society Hill to the appellant's maintenance shop in Darlington is Pearl Street. The appellant required these trucks to be brought to its maintenance shop in Darlington, there to remain overnight and receive any necessary repairs; and the men go out to the shop in the morning and from there are transported to the place of work in the trucks. The trucks were temporarily parked on Pearl Street and the automobile of respondent was driven into the rear end of the second truck of appellant, causing her to receive the injury complained of.

Under the cases of *Robinson v. State Highway Department*, 159 S. C., 405, 157 S. E., 136; *Greer v. State Highway Department*, 160 S. C., 510, 159 S. E., 35; and *Heidt v. State Highway Department*, 189 S. C., 310, 1 S. E. (2d), 188, we are constrained to hold that these trucks while thus temporarily parked on Pearl Street were "actually engaged" in highway construction.

Accepting as true the testimony of Clarence W. Flowers, the son of the respondent and the driver of her automobile at the time it was driven into the rear of one of the trucks of the appellant, the second ground of the motion for directed verdict is difficult to decide. While his testimony is in some particulars corroborated by the respondent and her daughter, the other occupants of the car, yet the physical facts, often referred to as "silent witnesses", as observed by all other witnesses, within a few minutes after the accident, do not support his version of the matter.

In discussing the testimony, we will disregard all testimony tending to prove specifications of negligence as to lack of parking lights on the truck. Pearl Street in the City of Darlington is a lighted street, and the Legislature has prescribed the precautions to be taken in parking a truck on or along a lighted street within the highway system, and there is no requirement of parking lights. In this connection, see *Hall v. Burg*, 206 S. C., 173, 33 S. E. (2d), 401. More-

over, if the truck was parked out in the street and at the angle as testified to by Flowers, then a parking light would have been of no benefit to an approaching automobile, and appellant could not escape liability by having parking lights burning.

Flowers, the driver of the car, testified: That on the night of November 6, 1942, at about 8:20, he was driving on Pearl Street towards Hartsville, "cruising along resting about twelve or fifteen miles an hour" in the middle of the street, and that there was a car approaching about a block and a half away; that he had plenty of time to "turn away and all of a sudden" he "felt a jolt and did not know exactly what happened"; that it knocked the breath out of him, but when he looked down he saw his mother (the respondent) lying in front of the car, and when his breath came back to him, he saw blood all over her face. (Direct examination.)

"Q. What caused the collision? A. Well, after I kind of got to myself, and got down I found that there had been a truck parked there in the street. I looked down to where there (they?) both stopped and I saw from the dirt that fell where they had been working on the road, the loose dirt just this side of the middle of the street and it showed all around there and it showed the outline of the truck, but at the time the car was pulled around to the side of the truck and the truck had gone up. the front right-hand wheel had gone up on the curb but the truck was cut near the middle of the street, the left-hand corner of the car had hit it. There was a light there on a tree this side, right in front of Edwards Street, there is a light there, and a big thick tree there also and the light is on this edge of the tree and the truck was on the far edge parked and I did not see it.

"Q. Well, now, were you looking where you were going? A. Yes, sir, I was. I saw a car a block and a half away, I was fixing to turn in for it when it come time."

After stating that Pearl Street was 35 feet wide, excluding the sidewalks, at the point of the accident, Flowers, with the

aid of a diagram, apparently made by him, testified (Direct examination) :

"Q. How far was that truck parked out in the street? A. In other words it was twelve feet and nine inches from the front as the mark shows where the dirt was and there was a tire mark on the pavement, it was twelve foot and nine inches from the center of the highway white line in the middle of the street to the front tire where the mark was that showed where the tire was before the collision, it was seven feet and nine inches in the street and it was twelve feet and nine inches from the center white line to the mark where the tire was before the collision, and that made the right-hand front tire be four foot, half of the street on that side from the center white line to the edge of the curb would be 17 and a half foot.

"Q. In other words, from the center to the curb it is seventeen and a half feet? A. Yes.

"Q. And taking twelve feet and nine inches away from seventeen and a half, that would give four feet and six inches that the right front wheel was away from the curb? A. Yes, it showed where the wheel and the dirt was where the two collided, it showed where the truck was at an angle of thirty-five or forty degrees.

"Q. That put the rear end of the truck how far from the middle of the street? A. I don't know, I did not measure the distance from the front wheel to the center of the street under the light.

"Q. You could not tell how far that truck was out in the street? A. Well, a fellow could use mathematics and figure it out.

"Q. Well, figure it out and see how far it was. Did you have enough room to pass driving in the middle of the street? A. No, sir. The dirt where the stuff dropped off the truck just this side of the right-hand side of the white line, it was not, I think I measured that.

"Q. How far was that from the white line? A. If I make no mistake it was two feet and three inches.

"Q. In other words, the distance from the rear end to the middle of the street was two feet and three inches? A. Yes."

Flowers not only admitted but rather boasted of the fact that the car he was driving was equipped with exceptionally good lights. There was also a street light within 65 feet of where the trucks were parked, but Flowers testified that the limbs from a large tree at that point prevented the light from shining on the parked trucks.

Parenthetically, but for the purpose of appraising the testimony of Flowers, Flowers testified that Mr. Funderburk, an employee of the State Highway Department (he had reference to Mr. J. V. Funderburk, maintenance superintendent of the Darlington County roads in the State Highway system), came to the scene of the accident shortly after it had occurred and while his sister and mother were still there, and upbraided the employees of the highway department in charge of the trucks for not having repaired the lights on the truck involved, as he had instructed them to do, before taking the trucks to the maintenance shop, and said, "Now see what has happened." The overwhelming testimony shows beyond cavil that Mr. Funderburk had not until after the accident ever seen the drivers of these trucks, that he did not reach the scene of the accident until after the sister and mother of Flowers had left, and that he had no conversation with the drivers of the trucks or other employees of the highway department concerning the lights on the trucks.

We are unable to definitely determine from the confusing testimony on behalf of the respondent whether there is a contradiction as to the location of the trucks on the street immediately following the accident, but apparently there is in the testimony of Flowers when he testified that after the collision the right front wheel of the truck involved was

up on the curb "but the truck was out near the middle of the street."

The theory of Mrs. Ruby Powers, the daughter of the respondent, and an occupant of the automobile driven by Flowers, her brother, was that the automobile came in contact with the end of the "spreader" attached to the body of the car and extending beyond the body, and that it was the windshield on the right-hand side of the car that first suffered such contact. She also testified that the fresh dirt in the street showed that the truck was parked at an angle of about thirty-five degrees, extending out into the street but she did not see the truck prior to the collision.

The testimony on behalf of the appellant was that both of its trucks were parked practically parallel with the curbing on the right-hand side of Pearl Street, and within a few inches of the curb; that immediately following the collision, they were so parked, except that the front right wheel of the rear truck (the one into which respondent's car was driven) had been knocked up on the curb. The following written statement of the conditions found by officers of the law within a few minutes after the accident and then and there prepared, and corroborated by a great number of witnesses, was admitted in evidence: "On November 6th, wreck on Pearl Street, 8:20 p. m., weather fair. Clarence W. Flowers, Route 4, Darlington, driving a 1935 Ford, License C-8793, ran into the back of a Chevrolet truck owned by the South Carolina State Highway Department, license No. W-668, that was parked by the right of Pearl Street headed west. Julian Hardy, driver of the truck, stated that he left the parking lights on the truck. There was no light on the truck when I got there. Rear right tire of the truck was three inches from the curb, front right wheel on curb, truck had been pushed against the other truck parked in front of it and the grill knocked in and left headlight broken. Truck lights would burn in front when turned on; tail light would not burn until brakes were applied. Body of truck was seven

feet, four inches from center of the street, tire was seven feet and eleven inches from center of the street. Flower's car badly damaged, right front bumper, fender, hood, body, door and windshield. Mrs. Flowers injured and sent to doctor at Hartsville."

Mr. J. V. Funderburk, a witness for appellant, testifies that Mr. Flowers, the driver of respondent's automobile, told him at the scene of the accident that he saw a car approaching about one and one-half blocks away and saw the trucks, and thought he could make it by the trucks, but that he did not. This testimony was corroborated by several witnesses. Mr. Funderburk also make a sketch drawn to scale, showing the scene of the accident, and that Pearl Street was only 30 feet wide between the curbs. It also purports to show the marks made by the respondent's car as it veered to the right of the street from the center, and then back towards the center of the street as it approached the trucks, and until it came in contact with the rear end of the rear truck.

If this truck weighing approximately 5,500 pounds had been parked on the street at the angle as testified to by respondent's witnesses, and her automobile weighing approximately 2,800 pounds was driven into it while travelling at only 12 or 15 miles per hour near the center of the street, all human experience teaches us that the rear end of the truck would have been knocked slightly farther into and down the street, and not more than a foot or two forward— certainly with not sufficient force at that angle to cause the front right wheel of the truck to climb over an 11-inch curb, and therefore the position of the truck after the collision would not have been as testified to by respondent's witnesses; whereas, if the truck was parked as the testimony on behalf of the appellant shows, it is most probable that the truck would have been knocked in the precise position with reference to the curb (rear and front wheels) as the testimony on behalf of appellant shows it to have been immediately after the collision; and the damage to the automo-

bile of respondent, and the damage to the front end of the rear truck also corroborates appellant's witnesses as to the manner in which the truck was parked prior to respondent's car being driven into same.

It is the duty of persons operating motor vehicles (and other vehicles) upon the highways of this State to keep a proper lookout for obstructions on the highways. Here we have an automobile being driven in the center of a street which is in the State Highway system, and not to the right of the center as required by statute, where the lights of the car would be more apt to disclose an object occupying the statutory path of the automobile. It was being driven at a speed from 12 to 15 miles per hour, and was equipped with good lights. In addition to this, there was a street light burning in less than 65 feet from where the trucks were parked. If the street light was obscured by overhanging tree limbs, then the lights from the automobile would have more clearly shown an object in the street. There is no issue in this case as to whether the respondent's car could have been stopped in time after discovering the truck so parked that the rear end therof was within two feet and three inches of the center of the street, because the driver of the car testified that he did not see the truck until after the accident, and there is no claim that he was blinded by the lights of an approaching motor vehicle. While Flowers testified that he was "looking where he was going", yet no explanation is offered as to why he did not see a truck parked so as to extend practically across the driving range of a vehicle traveling west on Pearl Street. If he had been looking as he should have been, he was obliged to have seen the truck, especially if it were parked as described by him.

In *Robinson v. Atlantic Coast Line Railroad Co.*, 179 S. C., 493, 501, 184 S. E., 96, 99, Mr. Justice Fishburne, writing the opinion of the Court, correctly and succinctly declared the established law in this State as to when the issue of contributory negligence should be submitted to a jury, and

when the Court should so find as a matter of law. We quote therefrom:

"It is not possible to lay down any definite rule by which to determine whether the question of contributory negligence is to be found, under the evidence, as a conclusion of law, or should be submitted to the jury as a question of fact. The determination of the question must necessarily be controlled by the facts and circumstances of the particular case. The court will not decide it as one of law if the testimony be conflicting, or if the conclusion to be drawn therefrom is doubtful and uncertain. This we have decided time and again. For under such circumstances the question clearly falls within the province of the jury.

"If, however, it clearly appears from the evidence that there was contributory negligence or gross contributory negligence proximately entering into and contributing to the accident at the time of its occurrence, it is the duty of the court to so find as a matter of law."

The weakness of respondent's position is that although there is abundant evidence describing the facts and circumstances surrounding the accident, as the respondent states them, the respondent's statement of the case does not explain the accident within the terms of the applicable statute. It is not enough that the accident occurred through a collision with a vehicle of the appellant, and that there was negligence on the part of the appellant in respect to the position of the vehicle at the time of the accident. The requirement of the statute is that the claimant "must allege and prove" that the injury was not brought about by his own negligence, and that he did not negligently contribute thereto. In the absence of an affirmative showing that the injury was not proximately caused by the claimant's own negligence or that the claimant's negligence did not proximately contribute thereto, the statutory burden has not been met.

Assuming that the position of the vehicle in this case involves negligence on the part of the appellant, the only ma-

terial facts in the case explanatory of the happening of the accident tend to eliminate this element of negligence as a proximate cause, and to lead to an inquiry as to just what did cause the accident. The claimant's testimony does not answer this inquiry.

Without characterizing respondent's testimony from the standpoint of its credibility or plausibility, the material fact is that it fails to explain why the accident occurred, and therefore fails to meet the respondent's statutory burden of establishing freedom from acts of omission and commission which proximately caused or proximately contributed to the happening of the accident.

"When it is necessary to resort to this enabling statute in order to maintain an action, the person claiming the benefit of the statute must bring himself or herself strictly within the terms of the statute * * *." *Lusk v. State Highway Department*, 181 S. C., 101, 186 S. E., 786, 791.

As stated in the case last cited, it is not always necessary to submit to the jury "the question or issue if such negligence or contributory negligence was a proximate cause of the injury and resulting damage, since, if the only reasonable inference to be drawn from all of the testimony is that the negligence of the complainant is a direct and proximate cause of the injury and damage, or that the negligence of the complainant contributed as a direct and proximate cause, then it would be the duty of the trial judge to order a nonsuit or direct a verdict against such plaintiff. And especially is this true in cases brought against governmental subdivisions and agencies where the right of recovery is allowed conditioned upon the plaintiff affirmatively proving that he, she, or it is without negligence or did not negligently contribute to the injury and damage."

As repeatedly stated by this Court, verdicts cannot rest upon conjecture or surmise. Especially in cases of the present character, the plaintiff must meet his statutory burden by

affirmative testimony. *Hunsucker v. State Highway Department,* 182 S. C., 441, 189 S. E., 652.

When after an examination of the respondent's testimony we are unable to account for the happening of the accident unless we discount or reject such testimony, and draw our own adverse inferences as to the cause of the accident, it cannot be said that there is even a scintilla of evidence adduced in support of the claimant's theory of the cause of the accident, within the rule repeatedly laid down by this Court. We are bound to take the affirmative evidence as we find it, and not speculate or theorize outside of the bounds of such evidence to find an explanation for the accident. See *Hunsucker v. State Highway Department, supra; Cooper v. South Carolina Highway Department,* 183 S. C., 155, 190 S. E., 499.

In my opinion it was error not to have granted appellant's motion for a nonsuit, and failing in this, not to have granted the motion for directed verdict in behalf of the appellant.

I think the judgment should be reversed and the case remanded with instructions to enter judgment in favor of appellant.